FRANCES GREENWOOD, PLAINTIFF IN ERROR, v. GEORGE LAW, DEFENDANT IN ERROR.

A parol agreement to sell and assign a bond and mortgage is a contract for the sale of goods, wares and merchandise within the sixth section of the statute of frauds.

On error.

For the plaintiff in error, *John W. Griggs.*

The plaintiff in error, who was the defendant below, was sued for damages for her failure to perfect and carry out an alleged bargain for the sale of a bond and mortgage.

The bargain was not in writing, nor was any written memorandum of it signed by her, nor was any money paid.

The amount of the mortgage was $3,700 ; the price was $3,000 and some accrued interest.

On the trial the defendant raised the defence of the statute of frauds, and moved to non-suit the plaintiff. The motion was denied and defendant took an exception.

I. The contract was for the sale of goods, wares or merchandise, and was therefore within the sixth section of the statute of frauds, and the plaintiff should have been non-suited.

The word "goods" in the statute properly includes a bond and mortgage.

The term is applied to movables, including choses in action.

Goods, *biens, bona,* includes all chattels, as well real as personal. *Co. Litt.* 118b; *Shep. Touch.* 96.

The word "goods" is *nomen generalissimum,* and when construed in the abstract will embrace all the personal estate of a testator, as bonds, notes, money, plate, &c. 1 *Rop. Leg.* 189 ; 1 *Atk.* 182 ; 1 *Ves.* 64. See definitions of "goods" in Webster's Dictionary ; Jacob's Law Dictionary ; Bouvier's Law Dictionary ; American and English Encyclopædia of Law.

Trover will lie for a bond or mortgage or other written security for money. *Besherer* v. *Swisber, Penn.* 748 ; *Todd*

v. *Crookshank,* 3 *Johns.* 432 ; *Terhune* v. *Executors of Bray,* 1 *Harr.* 53.

In Terhune *v.* Executors of Bray the Supreme Court of this state (Hornblower, C. J.) held that a bond and mortgage must be considered goods and chattels, within the terms of our statute, which declares " that where any testator or intestate shall, in his lifetime, have taken or carried away, or converted to his or her use the goods or chattels of any person, such person shall have and maintain the same action against the executors or administrators of such testator or intestate as he, she or they might have had or maintained against such testator or intestate," &c.

In England it has been held that the statute does not apply to a sale of shares in a joint stock banking company, nor to a sale of stock of a foreign state, nor to a sale of railroad shares, nor to a sale of shares in a mining company. *Benj. Sales,* § 111.

In the United States a different rule is followed, except in Indiana and New Hampshire.

Promissory notes are held to be within the statute. *Baldwin* v. *Williams,* 3 *Metc.* 367 ; *Hudson* v. *Weir,* 29 *Ala.* 294 ; *Gooch* v. *Holmes,* 41 *Me.* 523 ; *Riggs* v. *Magonder,* 2 *Cranch C. C.* 143.

Likewise shares in a manufacturing company. *Tisdale* v. *Harris,* 20 *Pick.* 9 ; *North* v. *Forest,* 15 *Conn.* 400 ; *Pray* v. *Mitchell,* 60 *Me.* 430 ; *Colvin* v. *Williams,* 3 *Harr. & J.* 38 ; *Fay* v. *Wheeler,* 44 *Vt.* 292, 293 ; *Thompson* v. *Alger,* 12 *Metc.* 428 ; *Boardman* v. *Cutter,* 128 *Mass.* 388 ; *Mann* v. *Bishop,* 136 *Id.* 495 ; *Gadsden* v. *Lance, McMull (S. C.) Eq.* 87.

It was held by the Court of Chancery in England before the American Revolution that shares in a corporation were goods, wares and merchandise within the statute of frauds. *Munsall* v. *Cooke, Pr. Ch.* 533 ; *Crull* v. *Dodson, Sel. Cas. Ch.* 41.

The more recent decisions in England are the other way; so far as shares in corporations are concerned ; but, so far as I

have been able to find, no English case in terms has decided the question as to bonds, promissory notes or other evidences of indebtedness.

The great weight of authority in this country and the earlier English cases are for including such securities in the terms of the statute.

On reason and principle they should be included.

They are within the policy of the statute.    *Tisdale* v. *Harris,* 20 *Pick.* 9, 13.

The phrase " goods, wares or merchandise " in section 6 of the statute is used in contradistinction from " lands, tenements and hereditaments " in the preceding section, and is intended to include whatever, except realty, is the subject of sale.    It is equivalent to the term " personal property."

II. The plaintiff should have been non-suited, because the evidence clearly proved a contract with Miss Hudson and not with George Law, the plaintiff.

The negotiations for the purchase were between Mr. Emley on one side and Mr. Greenwood and Mr. Brown on the other.

It is conceded that the assignment was to be made to Miss Hudson.

Mr. Emley gave Mr. Brown a memorandum in writing, directing that the assignment should be made to Miss Hudson.

That was the only disclosure made to defendant's representative as to the actual purchaser.

Undoubtedly it is the rule in cases of disputed testimony that the jury shall determine, as a question of fact, whether there has been a contract of sale or not.    *Smalley* v. *Hendrickson,* 5 *Dutcher* 371.

But here the plaintiff, by his own testimony, showed that there was no contract of sale with him, but that the bargain was made with Miss Hudson.

He should have been non-suited, because he manifestly failed to prove a contract with himself.

The declaration alleges a contract to sell and assign to plaintiff.    The proof shows a contract to sell and assign to Miss Hudson.

For the error of the court below in refusing to non-suit and
for the other errors assigned the judgment should be reversed.

For the defendant in error, *Eugene Emley.*

The plaintiff in error assigns for error :

The refusal of the court below to non-suit the plaintiff.

The motion for a non-suit rested upon the three following
grounds :

1. That the contract was void under the statute of frauds,
not having been in writing.

2. That, from the evidence, the contract was made with
Miss Hudson, and not with Mr. Law, the plaintiff.

3. That there was no evidence that the defendant, Mrs.
Greenwood, had ever authorized Mr. Greenwood and Mr.
Brown to make the alleged contract, or ever assented to it.

I. Considering the last of these propositions first, it is suf-
ficient to say that there was conclusive evidence that Mrs.
Greenwood had authorized Mr. Greenwood and Mr. Brown
to sell the bond and mortgage for $3,000 and the accrued
interest.

II. The same may be said of the second ground upon
which the motion for a non-suit was based, that it is not true
that, from the evidence, the bargain was not made with Mr.
Law, but with Miss Hudson.

Such evidence as there was on that subject showed that the
" bargain was made with Mr. Law."

It belonged to the jury to say whether that evidence was
sufficient or not.

III. The refusal of the court to grant a non-suit upon this
ground was proper, because—

The words " goods, wares and merchandise," in the statute,
do not include choses in action.

Although there appears at first to have been some differ-
ence of opinion upon this subject, the law is now well settled
in England.

The question appears to have been first raised in *Pickering* v. *Appleby*, 1 *Com.* 354, in connection with a sale of mining stock.  The court in that case was evenly divided.

The next case was *Colt* v. *Netterville*, 2 *P. Wms.* 304, brought for specific performance of an agreement to sell and transfer York-Buildings stock.  The Lord Chancellor says, as to whether a contract for stock is within the statute of frauds:  " This question was before all the judges of England, who were equally divided upon it, six against six, and, therefore, it is a point too difficult for me to determine on demurrer."

From this time, however, the rule seems to be established by the English courts with absolute unanimity of opinion. For example :

"A contract for the sale of shares in a banking company, of £10 value, is not a contract for the sale of goods, wares and merchandise, so as to require a written memorandum within the 17th section of the statute of frauds."  *Humble* v. *Mitchell*, 11 *Ad. & E.* 205 ; *Id.*, 3 *Perry & D.* 141.

In this case, Denman, C. J., says:  "Shares in a joint stock company like this are mere choses in action, incapable of delivery, and not within the scope of the 17th section."

In the same connection, see, also, *Heseltine* v. *Siggers*, 1 *Exch.* 856.

And so of railway shares:  "A contract for the sale of railway shares, is not a contract for the sale of goods, wares and merchandise, within the 17th section of the statute of frauds."  *Bowlby* v. *Bell*, 3 *Man., G. & S.* 284 ; *Tempest* v. *Kilner, Id.* 249 ; *Dancuft* v. *Albrecht*, 12 *Sim.* 189.

The last was a suit in Chancery for specific performance of a contract for sale of a certain number of railway shares.  The Vice Chancellor says:  " In my opinion this is a case to which the 17th section of the statute of frauds does not apply ; because it is impressed upon my mind that, in the decisions which have been made with respect to the 17th section, it has been held to apply only to goods, wares and merchandise which are capable of being in *part* delivered.  If there is an

agreement to sell a quantity of tallow or hemp, you may deliver a part; but the delivery of a part is not a transaction applicable, as I apprehend, to such a subject as railway shares."

Much less, then, it is applicable to such a subject as a bond and mortgage.

The same rule has been laid down with reference to mining shares: "A share in a joint stock mining company is not goods, wares and merchandise, within the 17th section of the statute of frauds." *Watson* v. *Spratley,* 10 *Exch.* 222 ; *Powell* v. *Jessopp,* 18 *C. B.* 336.

Many of the courts of this country have followed the English decisions. For instance:

"An agreement to sell a promissory note and mortgage is not within the statute of frauds, and need not be in writing. Promissory notes are not embraced in the terms, "goods, wares and merchandise as used in the statute." *Whittemore* v. *Gibbs,* 24 *N. H.* 484 ; *Hudson* v. *Wier,* 29 *Ala.* 294.

"The statute does not include contracts for the sale of shares, stocks, notes, checks, *bonds of evidences of value.*" *Vawter* v. *Griffin,* 40 *Ind.* 593.

While the question seems never to have been decided in this state, yet the English rule appears to have been adhered to by the judges of the Circuits. In the case of Thomson *v.* Oddy, which was a suit brought in the Passaic Circuit to recover damages for a breach of contract for the sale of a judgment, Justice Dixon held "that a judgment being a chose in action was not goods, wares and merchandise, within the meaning of the statute of frauds." This case may be found in 10 *N. J. L. J.* 291.

Some of the courts of this country have, it is true, taken a different view of the question, and have held choses in action to be included within the meaning of the statute. But in many of the states the phraseology of the statute has been changed; in some, as in California, Dakota, Nebraska, Nevada, New York, Minnesota, Montana, Utah, Wisconsin and Wyoming, by the substitution or addition of the words

"things in action," and in others, as in Connecticut, Florida, Mississippi and Oregon, by the words "personal property." Although, in these states, there has been no judicial interpretation of the language of the English statute, which has been adopted without change, as our statute, yet the addition of the more comprehensive terms, "things in action" and "personal property," would seem to indicate a belief that the original language of the statute was not broad enough to include "things in action" and all kinds of "personal property."

Whatever the reasons may be, founded upon policy (as they are in Massachusetts), for enlarging the meaning of the statute, it is difficult to reconcile them with the rules of statutory construction, one of which is, that words are to be taken in their natural and usual sense. When interpreted in accordance with the rule, how can either the word "goods," or "wares," or "merchandise" be clothed with a meaning that will embrace a bond and a mortgage on real estate. "When the language of a statute is plain and unambiguous, all arguments founded upon effects and consequences are futile."

Further, the statute clearly contemplates such things as are capable of delivery in part, for it declares that every contract * * * shall be void, unless "(2) the buyer shall accept *part of the goods* so sold, and actually receive the same." A contract for the sale of a bond and mortgage, therefore, is of such a character as to place it outside of the possible protection of a part of the statute, and as to such a transaction the statute in its entirety cannot apply.

The motion to non-suit, therefore, was properly refused, and the defendant's exception was not well taken.

·The opinion of the court was delivered by

VAN SYCKEL, J.  Law, the plaintiff below, gave to Greenwood, the defendant, a mortgage upon lands in this state for the sum of $3,700.  Law alleged that Greenwood entered into a parol agreement with him to assign him this mortgage for the sum of $3,000, and brought this suit to recover damages for the refusal of Greenwood to execute said parol agreement.

On the trial below, a motion was made to non-suit the plaintiff, on the ground that the alleged agreement was within the statute of frauds. The refusal of the trial court to grant this motion is assigned for error.

Lord Chief Justice Denman, in *Humble* v. *Mitchell*, reported in 11 *Ad. & E.* 205, and decided in 1840, said that no case directly in point on this subject had been found, and he held that shares in an incorporated company were not goods, wares and merchandise within the seventeenth section of the statute of frauds.

He overlooked the cases of *Mussell* v. *Cooke*, reported in *Precedents in Chancery* 533 (decided in 1720), and *Crull* v. *Dodson*, reported in *Select Cases in Chancery* 41 (decided in 1725), in which the contrary view was taken.

In the case of *Pickering* v. *Appleby, Com.* 354, this question was fully argued before the twelve judges, who were equally divided upon it. The cases decided in the English courts since 1840 have followed Humble *v.* Mitchell. They will be found collected in *Benjamin on Sales* (*ed.* 1888), in a note on page 106.

In this country a different rule prevails in most of the states.

In *Baldwin* v. *Williams*, 3 *Metc.* 365, a parol contract for the sale of a promissory note was held to be within the statute.

In Connecticut and Maine a contract for the sale of shares in a joint stock company is required to be in writing. *North* v. *Forest*, 15 *Conn.* 400 ; *Pray* v. *Mitchell*, 60 *Me.* 430.

Chief Justice Shaw, after a full discussion of the subject in *Tisdale* v. *Harris*, 20 *Pick.* 9, concludes that a contract for the sale of shares in a manufacturing corporation is a contract for the sale of goods or merchandise within the statute of frauds, and in the absence of the other requisites of the statute must be proved by some note or memorandum in writing signed by the party to be charged or his agent. He did not regard the argument, that by necessary implication the statute applies only to goods of which part may be delivered as worthy of much consideration. An animal is not susceptible of part delivery, yet undoubtedly the sale of a horse by parol is within the statute. The exception in the statute is, when part is deliv-

ered; but if there cannot be a delivery in part, the exception cannot exist to take the case out of the general prohibition.

Bonds and mortgages were expressly held to be goods and chattels in *Terhune* v. *Executors of Bray*, 1 *Harr.* 53. That was an action of trover for a bond and mortgage. Chief Justice Hornblower, in deciding the case, said that, although the attachment act and letters of administration seem to distinguish between rights and credits and goods and chattels, and although an execution against the latter will not reach bonds and notes, yet there is a sense in which upon sound legal principles such securities are goods and chattels.

This sense ought to be applied to these words in this case.

Reason and sound policy require that contracts in respect to securities for money should be subject to the reasonable restrictions provided by the statute to prevent frauds in the sale of other personal property.

The words "goods, wares and merchandise" in the sixth section of the statute are equivalent to the term "personal property," and are intended to include whatever is not embraced by the phrase "lands, tenements and hereditaments" in the preceding section. In my judgment, the contract sued upon is within the statute of frauds, and it was error in the court below to refuse to non-suit.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Depue, Garrison, Magie, Reed, Van Syckel, Bogert, Brown, Clement, Smith.    11.