Samuel T. **BROWN**, Plaintiff,

v.

Harold L. **VALENTINE**, Defendant.

Civ. A. No. 1305.

United States District Court
W. D. Virginia,
Roanoke Division.

March 26, 1965.

Wilbur L. Hazlegrove, Hazlegrove, Shackelford & Carr, Roanoke, Va., for plaintiff.

Frank W. Rogers, Jr., Woods, Rogers, Muse & Walker, Roanoke, Va., for defendant.

MICHIE, District Judge.

This diversity action was brought to collect damages for an alleged breach of a contract for the sale of securities. The defendant, by his amended answer, has raised as an affirmative defense the New Jersey Statute of Frauds and moved for summary judgment on the ground that any recovery under the contract, if the contract were found to exist, would be barred by that statute. Plaintiff has filed a motion for summary judgment on his own behalf arguing that the facts are not in dispute and that on that basis he should prevail. However, it appears that crucial facts are indeed in dispute and that the plaintiff may not prevail as a matter of law. His motion will therefore be denied. Turning to the defendant's motion, the facts are as follows:

In early 1960 the plaintiff, Samuel T. Brown (hereinafter called Brown), was the chief executive officer of Virginia Iron, Coal & Coke Company (hereinafter called the Virginia Company), and the owner of at least 30,000 of its shares. By the latter part of that year, however, control of the Virginia Company had apparently been obtained by the defendant, Harold L. Valentine (hereinafter called Valentine), and persons associated with or represented by him. Brown had resigned as the chief executive officer and as a member of the Board of Directors of the Virginia Company and Francis X. Carroll (hereinafter called Carroll), an associate of Valentine's for some years, had succeeded him.

At a meeting on July 28, 1960 Valentine, although already in control of the Virginia Company, indicated to Brown

his interest in acquiring, presumably largely for his associates, an additional $30,000 of its shares at a price of $6.00 net per share. Brown took the matter under advisement. At the same meeting there was a discussion of the possibility of selling to Brown certain Texas oil-producing properties owned by the Virginia Company.

On August 2nd Brown, through Carroll, offered to sell to Valentine the additional 30,000 shares and then left for Texas to consult a bank there about financing his contemplated purchase of the oil properties. Brown had advised Carroll as to where he could be reached in Texas. And on August 5th, Carroll, in Virginia, called Valentine in New Jersey to inquire whether Brown's offer would be accepted. He inquired of Valentine, "What's the deal?" and Valentine replied, "He sold them." Carroll then called Brown in Texas and so advised him.

If Carroll was Brown's agent for the purpose of ascertaining whether Valentine was going to buy his shares of stock of the company, it follows, as the defendant has contended, that the contract was made in New Jersey, it being generally conceded that when an offer is made by telephone call from one state to another, the contract is made in the state from which the acceptor speaks—in this case, New Jersey. 1 Williston on Contracts (3d Ed.) p. 271.

However, if Carroll served as Valentine's agent to accept Brown's offer, the same rule would indicate that the contract was made in Virginia. In that case the New Jersey Statute of Frauds would not be applicable and, as there exists no corresponding Virginia statute, the oral contract could be proved. In the view I take of the matter, this particular factual issue need not be resolved. As I construe the New Jersey statute, were it applicable, it would not bar recovery here.

What then is—or, more accurately, was—the New Jersey law at the time of this transaction in 1960? (The Uniform Commercial Code has since been enacted in New Jersey, taking effect on January 1, 1963). The pertinent section in effect at the time would appear to be § 46:30–10 of the New Jersey Statutes, part of the Uniform Sale of Goods Law, which reads as follows:

> "A contract to sell or a sale of any goods or choses of action of the value of five hundred dollars or upwards *shall not be enforceable* by action unless the buyer shall accept part of the goods or choses of action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." (Emphasis supplied)

Greenwood v. Law, 55 N.J.L. 168, 26 A. 134, 19 L.R.A. 688 (1893), held that the foregoing section applied to choses in action, including securities, and no later New Jersey case on the subject has been found.

What we are concerned with here is whether the New Jersey statute quoted above, using the language "shall not be enforceable," goes to the validity of the contract and wholly invalidates it or whether it means that the contract "shall not be enforceable" in the courts of New Jersey, though it may be valid and enforceable elsewhere. I have found no definite guide to a conclusion. But I am of the opinion that the courts of Virginia, a state which does not have such a provision in its statute of frauds, would construe the phrase in the New Jersey statute "shall not be enforceable" to mean "shall not be enforceable *in New Jersey*." A New Jersey substantive statute governing the validity of a contract must be applied everywhere. But when the statute does not go so far and merely renders the "contract * * * unenforceable" it should be assumed, in the absence of an authoritative New Jersey construction to the contrary, that New

Jersey is undertaking to lay down a rule only for its own courts and not for all the world—especially for parts of the world in which the public policy in such matters differs from the public policy of New Jersey. See Simmons Co. v. Crew, 84 F.2d 82, 91–96 (4th Cir. 1936) (Parker, J., dissenting).

The defendant, in seeking to avoid the contract, wants to construe it as meaning "Any effort to make (such) a contract shall be ineffective." But instead the statute recognizes that there is a contract and refers to it as a "contract" which it proceeds to make unenforceable unless in writing. But if it recognizes the existence of a "contract to sell  *  * goods" and then provides that it shall be "unenforceable" unless proved by a written instrument, then it has not invalidated the contract or made it void ab initio but has merely made it unenforceable in the absence of a signed writing.

New Jersey could have provided that such a purported contract shall be "void" as does § 11–1 of the Virginia Code with respect to certain other types of contracts. But the statute as written says that a certain type of "contract  *  * shall not be enforceable" and is therefore more like Virginia Code § 11–2 which provides that "No action shall be brought" in certain enumerated cases and which I concluded in Stein v. Pulaski Furniture Corp., 217 F.Supp. 587 (W.D. Va.1963), was not concerned with the validity of the contract but merely with its enforceability.

█ It follows then that, while the contract in this case was made in New Jersey and cannot be enforced there, it was not rendered void by the New Jersey statute and may therefore be enforced in Virginia.

I therefore feel that, in order to remove this issue from the case, I must decide this question in favor of the plaintiff and defendant's motion for summary judgment will therefore be denied.