**OCCIDENTAL FIRE AND CASUALTY CO. OF NORTH CAROLINA, Plaintiff,**

v.

**BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK, Defendant.**

**Civ. No. 79–0034–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

June 7, 1983.

William W. Eskridge, Abingdon, Va., for plaintiff.

J.D. Bowie, S. Gray Robinson, Bristol, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff in this action is Occidental Fire and Casualty Company of North Carolina (hereinafter referred to as "Occidental"). Occidental is a corporation organized and existing under the laws of North Carolina and has its principal place of business in Colorado. The defendant, Bankers and Shippers Insurance Company of New York (hereinafter referred to as "Bankers and Shippers"), is a corporation organized and existing under the laws of New York and has its principal place of business in New York. Jurisdiction is founded on diversity of citizenship and the amount in controversy. This cause is before the court on Occidental's request for a declaratory judgment that Bankers and Shippers is obligated under the terms of one of its policies and/or Texas laws and regulations to provide primary coverage in a wrongful death action pending in the court. Bankers and Shippers has answered, admitting that it issued a policy to Texas Farm Lines but denying that it owes coverage for the accident in question. Both parties have thoroughly briefed this matter and submitted affidavits to the court; therefore, the cause is now ripe for decision.

## FACTS

On February 7, 1976, Occidental issued a general commercial automobile comprehensive liability insurance policy to James David Sanders, a contract carrier operating out of the Bristol, Virginia area. The term of the policy was one year and it specifically insured a 1969 White tractor owned and operated by Mr. Sanders.

On October 19, 1976, Bankers and Shippers issued an insurance policy to Texas Farm Lines, Inc., a specialized carrier under Interstate Commerce Commission and Texas regulations, at its headquarters at Dallas, Texas. The term of the policy was also for one year. This policy insured only the vehicles listed on the insurance policy schedule, which did not include the above-mentioned 1969 White tractor.

On October 27, 1976, Bankers and Shippers filed its Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance ("Certificate of Insurance") with the Railroad Commission of Texas, certifying that Bankers and Shippers had issued to Texas Farm Lines a policy of insurance effective from October 19, 1976, which, by attachment of the Liability Insurance Endorsement, had been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed on Texas Farm Lines by the Motor Carrier Law of Texas. This Certificate of Insurance was in full force and effect on November 1, 1976.

On or about October 29, 1976, said tractor and a 1962 Strick trailer were leased on behalf of Sanders by his driver, Robert A. Calhoun, to Texas Farm Lines for the purpose of hauling a load of Lea & Perrins Sauce from Fairlawn, New Jersey to Dallas, Texas.

Paragraph Number Four of the lease, in printed form, stipulated that Texas Farm Lines (Lessee) would assume full control of

vehicle and the driver and would provide for public liability and property damage insurance on the leased equipment during the term of the lease. Paragraph Nine of the lease stipulated that the lessor (Sanders and/or Calhoun) was to provide "public liability and property damage insurance." This clause was typewritten upon the pre-printed form by Texas Farm Lines' agent, Joseph E. Iaciofoli, Jr. prior to the execution of the document. The document was then executed by Iaciofoli and Calhoun.

On or about November 1, 1976, while Calhoun was operating the tractor and trailer described in the lease agreement, the tractor and trailer were involved in a collision with a bridge abutment on the public highways in Texas. As a result of the collision, the bridge sustained extensive property damage, two hitchhikers riding in the tractor were injured, and a third hitchhiker, Peter Gray, riding in the tractor, was killed. Mr. Gray's parents filed suit against Calhoun, Sanders, and Texas Farm Lines; and, have stipulated that they will abide and be bound by this court's decision on the present issue.

Texas Farm Lines, Sanders and Calhoun, through Occidental, contend that Bankers and Shippers is obligated to provide them with coverage for the claims asserted against them and to defend them in the action now pending in this court. Bankers and Shippers has taken the position that no such obligation exists with respect to Texas Farm Lines, Calhoun and Sanders.

This declaratory judgment suit has been brought by Occidental to resolve this issue.

### ISSUE

Occidental has espoused several theories to support the position that Bankers and Shippers must provide primary coverage for the collision. This court finds none of Occidental's arguments to be of merit; however, one argument is worthy of discussion. Therefore, the court will only address the issue of whether the filing by Bankers and Shippers of a Certificate of its policy to the Railroad Commission of Texas obligates Bankers and Shippers to provide coverage to Sanders, Calhoun or Texas Farm Lines for claims arising out of the collision.

After careful consideration of the applicable Texas statutes and regulations, the Bankers and Shippers policy, and the limited case authority, this court finds that such a filing did not so obligate Bankers and Shippers in this case.

### I. CONFLICT OF LAW

Jurisdiction is alleged by reason of diversity. In diversity cases, this court is bound by and must follow the law of the state in which it sits. *Erie Railroad Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Hence, the law of the Commonwealth of Virginia on conflicts of law is to be applied. In Virginia, the making of a contract is governed by the place where the contract is made; *Woodson v. Celina Mutual Insurance Co.,* 211 Va. 423, 177 S.E.2d 610 (1970), and performance is to be governed by the law of the state of performance, *Norman v. Baldwin,* 152 Va. 800, 148 S.E. 831 (1929). Virginia decisions are in accord with the general rule that the interpretation of the insurance contract depends upon the place where the contract was made. *Woodson, supra.* In the instant case, the Bankers and Shippers contract was made in Texas; therefore, Texas law is controlling.

### II. LIABILITY UNDER THE POLICY AND LEASE AGREEMENT

The policy issued by Bankers and Shippers to Texas Farm Lines does not include the tractor and trailer leased to the Texas Farm Lines. In fact, Occidental concedes that Bankers and Shippers does not have coverage under the terms of the policy.

The policy states:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damage because of:

 A. bodily injury or

 B. property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the schedule, of an owned automobile or of a temporary substitute automobile. (Bankers and Shippers' Exhibit A–2).

The leased tractor and trailer are not on the schedule designated "Description of Owned Automobiles" nor do the tractor and trailer come under the policy's definition of "temporary substitute." The policy specifically excluded liability "assumed by the insured under any contract or agreement."

■ Occidental points to the lease from Sanders to Texas Farm Lines in partial support of its contention that Bankers and Shippers was the primary carrier. In Paragraph Four (a printed paragraph), the lessee Texas Farm Lines agreed to provide for public liability and property damage insurance on the leased equipment. In Paragraph Nine (typewritten) Sanders agreed to provide public liability and property damage insurance. The court finds that the lease agreement between Sanders and Texas Farm Lines could not, and did not, alter the obligations owed by Occidental or Bankers and Shippers. It is well settled that an insurer's obligations to its insured cannot be altered by contracts between its insured and third persons and cannot be altered by its insured and third persons. *Carolina Casualty Insurance v. Underwriters Insurance Company*, 569 F.2d 304 (5th Cir.1978); *Transport Indemnity Company v. Indemnity Company*, 535 F.2d 232 (3rd Cir.1976); *Carolina Casualty Insurance Company v. Transport Indemnity Company*, 488 F.2d 790 (10th Cir.1973).

■ It is clear that Bankers and Shippers does not owe coverage under its policy and that the lease agreement does not alter the policy.

## III. LIABILITY UNDER TEXAS STATUTES AND REGULATIONS

■ Occidental next argues that Bankers and Shippers has primary coverage by virtue of its certification of its policy to the Railroad Commission of Texas as proof of the financial responsibility of Texas Farm Lines with respect to the operation of motor vehicles on the public highways of Texas.

Tex.Rev.Civ.Stat.Ann., Art. 911b, § 13 provides in pertinent part:

> Before any permit or certificate of public convenience and necessity may be issued to any motor carrier and before any motor carrier may lawfully operate under such permit or certificate as the case may be, such motor carrier shall file with the Commission bonds and/or insurance policies issued by some insurance company authorized by law to transact business in Texas in an amount to be fixed by the Commission under such rules and regulations as it may prescribe, which bonds and insurance policies shall provide that the obligor therein will pay to the extent of the face amount of such insurance policies and bonds all judgments which may be recovered against the motor carrier so filing said insurance policies and bonds, based on claims for loss or damages from personal injury or loss of or injury to property occurring during the term of said bonds and policies and arising out of the actual operation of such motor carrier; ... The Commission may accept in lieu of the filing of the original policies of insurance, a Certificate of Insurance, in such form as may be prescribed by the Commission, which Certificate, when filed with the Commission, will bind the obligor thereunder and satisfy the requirements of this section as if the original policies of insurance had been filed.

Pursuant to this statute, Bankers and Shippers, on or about October 27, 1976, filed with the Commission its Certificate of Insurance (Exhibit A–13 to Bankers and Shippers brief). Bankers and Shippers represented in the Certificate of Insurance that the policy of insurance it had issued on October 19, 1976 to Texas Farm Lines had been amended by attachment of the Liability Insurance Endorsement to provide automobile and bodily injury and property damage liability insurance covering the obliga-

tions imposed on Texas Farm Lines by Art. 911b, Section 13. The endorsement provides:

1. The certification of the policy, as proof of financial responsibility under the provisions of any state motor carrier law or regulations promulgated by any state commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby. (Bankers and Shippers' Exhibit A–8)

Occidental, conceding that there is no case on point to support their position, argues that the Bankers and Shippers policy was amended by the filing of the certificate and endorsement. Bankers and Shippers argues that the filing only obligates them to provide coverage for

liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby. (Bankers and Shippers Exhibit A–8)

Occidental, conceding that there is no case on point to support their position, argues that the Bankers and Shippers policy was amended by the filing of the certificate and endorsement. Bankers and Shippers argues that the filing only obligates them to provide coverage for liability incurred while Texas Farm Lines was operating under and within the scope of authority granted by the specialized motor carrier certificate issued by the Texas Railroad Commission.

Texas law provides that in order for a specialized motor carrier to be certified, the applicant must set forth:

The commodity or commodities or class or classes of commodities which the applicant proposes to transport and the specific territory or points to, or from, or between which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use.

Vernon's Ann.Civ.St. Art. 911b, § 5a(c)(2).

Texas law also requires that an annual report be filed with the Railroad Commission for the purpose of identifying the vehicles the carrier intends to operate. Vernon's Ann.Civ.St. Art. 911b, § 5a(g). The plaintiff has failed to set forth any evidence from which the court may infer that Texas Farm Lines included a description of the tractor and trailer at issue in either the application for the certificate or its annual report filed with the Railroad Commission. The court, therefore, infers that the tractor and trailer were not set forth in the description of Texas Farm Lines vehicles filed with the Railroad Commission.

In addition, the vehicle involved in the accident was not transporting goods which it was authorized to transport. Exhibit C to Occidental's brief reveals that Texas Farm Lines was granted the authority to transport only those commodities exempt from economic regulation under the Interstate Commerce Act, Part II, Section 203(b). Exempt commodities under this Act are "livestock, fish, or agricultural (including horticultural) commodities (*not including manufactured products thereof*) ... (emphasis added) Mr. Calhoun's deposition (pp. 10–11) reveals that Lea and Perrins Sauce was being transported at the time of the accident. This is a manufactured product and not an exempt commodity under the Act.

Finally, in order for a leased vehicle to come under Texas Farm Lines' certificate, a copy of the lease would have to be filed with the Railroad Commission pursuant to Tex.Rev.Civ.Stat.Ann. Art. 6701c–1, § 2. There is no evidence that Texas Farm Lines ever made such a filing. These facts, together with the fact that the required fee had not been paid for the registration of the vehicle involved in the accident, lead the court to the conclusion that the operation of the vehicle was not under the certificate issued by the Texas Railroad Commission to Texas Farm Lines.

In the case of *Travelers Ins. Co. v. Caldwell,* 133 F.2d 649 (8th Cir.1943), the court interpreted an Arkansas statute similar to the Texas statute at issue. The Eighth Circuit held that a statutory policy filed in connection with the application of the insured to the Arkansas Corporation Commission for authority to engage in specified motor vehicle operations did not cover liability incurred by the insured in operation beyond the range of its authority under its license.

Similarly, in *Trinity Universal Company v. Cunningham,* 107 F.2d 857 (8th Cir.1939), the court held that the power of the Commission to require a motor vehicle common carrier to purchase liability insurance, as a prerequisite to granting a common carrier license, was limited to the operation over which the Commission had jurisdiction, and that the phrase "pursuant to the certificate" must be interpreted to exclude from the scope of the insurance coverage vehicles and operations not under the Commission's supervision.

Kansas, like Texas, requires an endorsement on liability policies to the effect that the insurer would be required to pay any final judgments rendered against the carrier for personal injury or property damage caused by motor vehicles operated "pursuant to permit." The Kansas Supreme Court interpreted the statutory endorsement in *Smith v. Republic Underwriters,* 152 Kan. 305, 103 P.2d 858 (1940). The Court stated the following reasons for its decision:

> Having given consideration to the commercial operations provided for in the certificate or permit—and therein specifically set out the company issues a policy covering vehicles engaged in such operations. It does not insure vehicles otherwise engaged—that is, which are being used for commercial, personal or social purposes outside the operations covered by the permit. Or, as the endorsement has it, one policy covers vehicles being operated 'pursuant to the permit.' ...
> The certificate or permit simply authorizes certain transportation for hire which cannot otherwise be lawfully engaged. 103 P.2d at 860.

The Tenth Circuit Court of Appeals reached a similar result in interpreting the New Mexico motor carrier financial responsibility laws. The applicable statute required a motor carrier, before engaging in operations upon the highways of New Mexico under any certificate of public convenience and necessity or any motor carrier permit issued by the Corporation Commission, to file with the Corporation Commission a policy of insurance conditioned to pay "all losses and damages proximately caused by or resulting from the negligent operation, maintenance or use of motor vehicles under certificate or permit or for loss or damage to property of others ..." N.M. Stat.Ann. § 68–1344 (1941). The Court of Appeals upheld the trial court's finding that at the time of the accident, the vehicle was not being operated by the insured under the permit issued by the Corporation Commission. The Court of Appeals then held that a "policy filed in accordance with the requirements of § 68–1344, ... does not cover a vehicle not being operated under a certificate or permit issued by the Corporation Commission." *Putts v. Commercial Standard Insurance Co.,* 173 F.2d 153, 155 (10th Cir.1949).

The Texas cases cited by the plaintiff are not, as the plaintiff concedes, on point. *Davis v. Employers Casualty Company,* 214 S.W.2d 642 (Ct.Civ.App.Tex.1948) was an action by an insurer against a common carrier for premiums allegedly owed on leased equipment. The Texas Railroad Commission had issued to Davis, under the provisions of Article 911b, § 13, a common carrier permit authorizing him to transport petroleum products in leased vehicles. The Court held that the Employers Casualty policy, which included a "hired automobiles endorsement," provided coverage for the leased vehicles.

*Davis* differs from the instant case in that the *Davis* permit covered leased vehicles whereas Texas Farm Lines' certificate did not.

*Commercial Standard Ins. Co. v. McKissack,* 153 S.W.2d 997 (Ct.Civ.App.Tex.1941) is also inapplicable to the case at bar. In

*McKissack,* the policy contained an endorsement stating that coverage applied to all trucks and trailers belonging to or under the directions of the insured, whether specifically listed in the policy or not. The permit issued by the Railroad Commission recites that the certificate covered equipment owned by the carrier not in excess of three trucks. At the time of the accident in issue, the truck involved was a substitute for a truck being repaired and was being operated under the certificate to haul a commodity authorized by the certificate. The Court held that the damaged truck was covered by the insurance policy.

The facts in *McKissack* differ in several important respects. First, the policy specifically covered unnamed vehicles; the Bankers and Shippers policy does not. Secondly, the vehicle in *McKissack* was a substitute vehicle, while the White tractor and Strick trailer were additional vehicles. The vehicle was carrying a commodity authorized by the certificate; the Texas Farm Lines leased vehicle was not. Because of these factual differences, the court finds that the *McKissack* case is inapplicable to the case at bar.

### IV. CONCLUSION

In summary, the leased tractor and trailer were not covered by the Bankers and Shippers policy by the terms of the policy. There is no case authority for the proposition that Bankers and Shippers should be obligated to provide coverage by virtue of its filing with the Texas Railroad Commission. Even if coverage were owed by virtue of the filing, that coverage would extend only to the extent that Texas Farm Lines was operating under the certificate issued by the Commission. The facts in this case lead the court to conclude that the operation of the leased vehicle was not pursuant to the certificate; therefore, the filing could not be relied upon to impose coverage.

Therefore, for the reasons stated herein, the court finds that the Bankers and Shippers policy does not provide coverage for the accident at issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.