**Udo MADAUS, Plaintiff,**

v.

**NOVEMBER HILL FARM, INC., Defendant.**

**Civ. A. 83–0006–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

March 26, 1986.

---

Richard T. Robol, Seawell, Dalton, Hughes & Timms, Norfolk, Va., for plaintiff.

John K. Taggart, III, Smith, Taggart, Gibson & Albro, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court on plaintiff's motion for summary judgment filed in the above-styled action in November, 1984. Although plaintiff's motion was withdrawn after briefs were submitted by both parties, the court takes this opportunity before trial to rule upon an issue presented in the parties' briefs—that of the law to be applied in the present action.

### I.

Based upon the pleadings filed in this case, and upon the memoranda filed with respect to plaintiff's motion for summary judgment, the following facts are not in dispute. Plaintiff, Udo Madaus, is a citizen and resident of the Federal Republic of Germany ("West Germany"). Defendant, November Hill Farm, Inc., is a Virginia corporation, having its principal place of business in Albemarle County, Virginia. On or before June 2, 1981, defendant and plaintiff entered into an agreement under which plaintiff agreed to sell to defendant a horse named "William the Conqueror". The terms of the agreement were as follows: the purchase price of $40,000 was to be made within one month of the date that defendant resold the horse, or by March 31, 1982, whichever was earlier; delivery of the horse by plaintiff was to be made on or by June 20, 1981, to a carrier in West Germany designated by the defendant, at which time title and risk of loss were to pass to the defendant; the sales contract would not become final until the horse's sound physical health was confirmed by an examination by the Hochmoor Clinic, performed at plaintiff's expense; the purchase price was personally guaranteed by Dr. Joseph Enning, defendant's authorized agent.

On June 2, 1981, Dr. Enning confirmed the terms of this agreement in a Telex to Dr. Madaus. According to the defendant, on June 4, 1981, Dr. Madaus also confirmed the agreement in a Telex to Dr. Enning, but requested that the date of payment be changed to an earlier date. Enning objected, and Dr. Madaus finally agreed to the original terms in full in a Telex dated June 9, 1981. On June 8, 1981, William the Conqueror was examined by Dr. med. vet. de. Schmitz, and apparently no illnesses or problems were found at that time. On June 10, 1981, the horse was again examined by a Dr. Boneing at the Hochmoor Clinic. Again, no illnesses or problems were identified by Dr. Boneing, other than a previously existing ligament disease in the horse's forelegs, which apparently had not worsened since a prior examination in October, 1979.

On June 30, 1981, plaintiff delivered William the Conqueror to a commercial shipper retained by the defendant and located in West Germany. The horse was taken by the shipper to Amsterdam, transported to

the United States, and then delivered to the defendant. On or about August 2, 1981, defendant notified plaintiff by Telex that it was rescinding "the sales contract on the ground that William the Conqueror was lame." Plaintiff, however, refused to rescind the purchase agreement or to accept the return of the horse, and instead demanded full payment of the purchase price.

## II.

■ Under the United States Supreme Court's decision in *Klaxon Company v. Stentor Electric Manufacturing Company, Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the applicable law in this case must be determined according to the choice-of-law rules of the Commonwealth of Virginia. However, the parties disagree as to what Virginia's choice-of-law rules require in the present case. Plaintiff maintains that, under Virginia law, questions concerning the performance of a contract are governed by the law of the place of performance, and that the present case is thus governed by the law of West Germany. In direct contrast, defendant argues that the Uniform Commercial Code ("UCC"), as adopted in Virginia, governs the present case, and that the U.C.C. requires that the law of Virginia apply to any sales contract which bears an "appropriate relation" to Virginia. Va.Code § 8.1–105 (1950). Defendant argues that the contract in this case bore such an "appropriate relation" to Virginia and that Virginia law must thus apply. For the reasons stated below, however, this court finds that the law of West Germany applies to the present action.

Notwithstanding the ingenious arguments forwarded by defendant, it is beyond question that under Virginia law, the law of the place of performance governs questions concerning the performance of a contract. *Arkla Lumber & Manufacturing Co., v. West Virginia Timber Co.*, 146 Va. 641, 648, 132 S.E. 840 (1926); *Equitable Trust Company v. Bratwursthaus Management Corporation*, 514 F.2d 565 (4th Cir.1975); *Occidential Fire and Casu-*

*alty Company v. Bankers and Shippers Insurance Company*, 564 F.Supp. 1501 (W.D.Va.1983); *In re Lincoln Industries, Inc.*, 166 F.Supp. 240 (W.D.Va.1958). The place of performance of a sales contract is usually considered to be the place where goods are delivered. *In re Lincoln Industries*, 166 F.Supp. at 243. In the present case, there is little question that performance of the sales contract was to occur at the time defendant's agent accepted delivery of "William the Conqueror", at which time risk of loss passed from the plaintiff to the defendant. Delivery, and thus performance of the contract, took place in West Germany. Under the choice-of-law rules of Virginia then, the law of West Germany must govern questions concerning the performance of the contract in the present case.

Plaintiff, however, suggests that the U.C.C. as adopted in Virginia controls the present case. Section 8.1–105 of the Virginia Code (section 1–105 of the U.C.C.) states that, absent any choice-of-law clause in a sales contract, "this act applies to any transaction bearing an appropriate relation to this state." The Official Comment to Section 1–105 states that "where a transaction has significant contacts with a state which has enacted the Act, and also with other jurisdictions, the question of what relation is 'appropriate' is left to judicial decision." In addition, since there is no indication in Section 8.1–105 whatsoever that the provision was intended to reject or to supercede previously established choice-of-law rules in Virginia, and since the "appropriate relation" of a transaction is to be determined by the courts, section 8.1–105 must be read consistently with the prior case law discussed above. Thus, even under Section 8.1–105, this court finds that the law of West Germany must control questions concerning the performance of the sales contract in the present case.

Even under a "center of gravity" test, accepted by many jurisdictions under the U.C.C., but not yet widely accepted under Virginia law, this court believes that the law of West Germany would still apply to

the present case. *Cf. Ingersoll-Rand Financial Corporation v. Nunley,* 11 B.R. 528 (W.D.Va.1981) (adopting a "center of material contacts" test in determining the law to be applied under the Uniform Commercial Code.) Although some communication regarding the date of payment apparently took place via Telexes between West Germany and Virginia, the overwhelming bulk of the contract negotiations preceding the sale of "William the Conqueror" took place between Dr. Enning and Dr. Madaus within West Germany; nearly all of the material terms of the contract were negotiated and agreed upon through communications made completely within West Germany; the place of performance of the contract was in West Germany; the subject matter of the contract was, at all times during the contracting process, located in West Germany; the plaintiff is a domiciliary and resident of West Germany; and, as discussed more fully *infra*, the contract was made in West Germany. Although it is not necessary to the court's decision today, it appears that even under a "center of gravity" test, the law of West Germany would apply to the present case.

### III.

Defendant also argues that its claims regarding the validity of the contract itself must be determined by Virginia Law. Under Virginia law, questions concerning the validity of the contract, as opposed to the performance of the contract, are governed by the law of the place where the contract is made. *Occidental Fire and Casualty Company,* 564 F.Supp. 1501, 1503 (W.D.Va.1983). In addition, a contract is appropriately deemed to be executed in the state or jurisdiction where the final act necessary to make the contract binding is done. *Cf. Hewitt v. Hutter,* 574 F.2d 182 (4th Cir.1978). Similarly, the place of acceptance of a proposal is the place where a contract is made, since acceptance by the offeree completes the contracting process. *Brown v. Valentine,* 240 F.Supp. 539, 540 (W.D.Va.1965).

Defendant argues that although much of the negotiation was done in West Germany, plaintiff rejected its final offer in his June 4, 1981, Telex, and made a "counter offer" which included a different payment date. Dr. Enning apparently rejected that "counter offer" in a Telex to Dr. Madaus also dated June 4, 1981, and affirmed the terms of the defendant's original offer. Subsequently, in a June 9, 1981, Telex sent from West Germany to Virginia, the plaintiff accepted the original terms of the defendant's offer, including the originally agreed upon payment date. Defendant argues that this Telex constituted the final act in the contracting process and, furthermore, that this acceptance took place in Virginia rather than in West Germany.

The court agrees that, under the facts as outlined above, the contract likely was finalized with the June 9, 1981, Telex from plaintiff to the defendant. It does not follow, however, that the place of contracting was Virginia. The last act necessary for the contract to become binding came in plaintiff's acceptance of the offer in a Telex originating in West Germany. It is a well-established principle of contract law, often referred to as "the mailbox rule", that an acceptance is final and binding once it "irretrievably leaves the hands of the acceptor." *See Restatement of the Law, Contracts,* § 64 (1981). In the present case, therefore, the contract was executed once plaintiff's Telex of June 9, 1981, was sent. *See also Brown v. Valentine,* 240 F.Supp. 539 (W.D.Va.1965) (when an offer is made by telephone call from one state to another, the contract is executed in the state in which the acceptor speaks.) Thus, in the present case, the contract was executed in West Germany, and both the validity of the contract itself as well as the performance of the contract must be determined according to West German law.

For the reasons stated above, the court hereby determines that the law of West Germany shall govern the determination of the substantive issues presented in this case.