## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Guzy

v.

Hoban

April 23, 1997

Case No. CH96-3783

BY JUDGE THOMAS S. SHADRICK

This matter came before the court on Defendant's Demurrer to Plaintiff's five count Bill of Complaint. Plaintiff alleges breach of express oral agreement, breach of implied agreement, promissory estoppel, breach of express partnership or joint venture, and breach of implied partnership or joint venture agreement. The court heard oral arguments on February 6, 1997, and the parties subsequently submitted briefs in support of their respective arguments.

### Facts

Plaintiff is a horticultural assistant at Tidewater Community College, who supervises three graduate students. Defendant is a career Navy aviator, who is currently the executive officer of a flight squadron in Jacksonville, Florida.

Plaintiff and Defendant became acquainted in the fall of 1989 and became engaged in 1991. At that time, Defendant began residing at Plaintiff's home in Virginia Beach. According to the Bill of Complaint, Defendant suggested to Plaintiff that they pool their resources and purchase a Formula Boat. Plaintiff claims that Defendant suggested that the Formula Boat be purchased by means of a mortgage loan using Plaintiff's home as collateral, which would enable the parties to obtain a more favorable interest rate and obtain a tax deduction once they were married.

Plaintiff also claims that Defendant agreed to be responsible for the monthly mortgage payments if Plaintiff obtained the mortgage in order to purchase the Formula Boat. According to Plaintiff, Defendant needed to keep the title to the Formula Boat out of his name, until such time as his divorce from his wife was finalized.

The boat had a manufacturer's list price of $65,000.00 and was offered for sale at the sum of $54,500.00. Plaintiff applied for and was approved for a $65,000.00 mortgage, the proceeds of which were used to pay for the Formula Boat and closing costs for obtaining the mortgage. Part of the remaining net proceeds from the mortgage were used to pay certain credit card debt which the parties had accumulated, and the balance was held for their mutual benefit.

According to the Bill of Complaint, the parties agreed that Defendant would be responsible for payment of the monthly mortgage payments and that Plaintiff would pay the monthly storage costs for the boat. The parties also agreed, according to the Bill of Complaint, that they would be equally liable for repayment of the additional funds which were borrowed over and above the cost to purchase the Formula Boat.

Delivery of the Formula Boat occurred in August 1992. From October 1992 through March 1993, Defendant paid the storage costs and additional living expenses equivalent to the amount of the mortgage. Beginning in April 1993, after his divorce became final, Defendant began making the mortgage payments on Plaintiff's home directly to the mortgage lender, paying each monthly payment for 27 consecutive months through July 1995. Beginning in April 1993, Plaintiff paid the monthly storage costs. Together the parties paid the maintenance and repair costs for the Formula Boat and shared the expense of operating it.

According to the Bill of Complaint, from the time the Formula Boat was purchased, Defendant exercised primary rights as the owner. He was the principal driver, took care of all maintenance, and represented to the public that he was the owner of the boat, or that he and Plaintiff had purchased the boat together.

In October 1994, Defendant was assigned by the United States Navy to San Diego, California, and in January 1995 he was transferred to Jacksonville, Florida. In May 1995, the parties broke off their engagement, and in June 1995, Defendant moved out of Plaintiff's home. After paying the July 1995 mortgage payment, Defendant refused to make any further payments on the mortgage and refused to pay other costs associated with the maintenance and storage of the boat. On January 28, 1996, Plaintiff sold the boat for the sum of $33,250.00. This suit followed.

*Standard for Granting a Demurrer*

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged." *Ames v. American National Bank*, 163 Va. 1, 37 (1934). A demurrer, unlike a motion for summary judgment, does not allow the court to evaluate and decide the merits of a claim; it only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *Elliott v. Shore Stop, Inc.*, 238 Va. 237 (1989).

*Breach of Express Oral Agreement (Count I) and*
*Breach of Implied Agreement (Count II)*

Plaintiff alleges that she and Defendant entered into an agreement to buy a Formula Boat whereby he would pay the monthly mortgage payments and she would pay the monthly storage costs. Plaintiff contends that Defendant breached this agreement and that, as a result, she has incurred $34,000.00 in damages.

Defendant argues that this court lacks jurisdiction to hear Plaintiff's Breach of Express and Implied Agreement claims as these claims are causes of action in law, not equity. Defendant also argues that these claims are barred by the Statute of Frauds.

A contract within the ambit of the Statute of Frauds is not void *ab initio* but cannot be enforced. *Burruss v. Hines*, 94 Va. 413, 419 (1897).

The statute is procedural or remedial in nature and is concerned, not with the validity of the contract, but with its enforceability. *Brow v. Valentine*, 240 F. Supp. 539 (W.D. Va. 1965). The object of the Statute of Frauds is to prevent frauds and perjuries, and not to perpetrate them, so that the statute is not enforced when to do so would cause a fraud and a wrong to be perpetrated. *Reynolds v. Dixon*, 187 Va. 101 (1948).

Under certain conditions, where there has been part performance, a court of equity will avoid the statute and enforce an oral agreement. *T. v. T.*, 216 Va. 867 (1976). In such cases the parol agreement must be certain and definite, the acts proved in part performance must refer to, result from, or be made pursuant to the agreement, and the agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation. Moreover, the act

or acts of part performance must be of such unequivocal nature as to be evidence of the existence of an agreement. *Pair v. Rook*, 195 Va. 196 (1953).

Here, Plaintiff has alleged that there was an agreement between her and Defendant and has alleged facts sufficient to demonstrate that there has been partial performance of the agreement. (Since a demurrer admits all well pleaded facts, the court must take as true the allegation that Defendant made 27 consecutive mortgage payments). According to *T. v. T.*, a court of equity can avoid the Statute of Frauds under these circumstances and enforce the oral agreement. Thus, equity jurisdiction is proper and the Statute of Frauds does not bar Plaintiff's claim.

It further appears that the doctrine of equitable estoppel may preclude a statute of frauds defense in this case. Four elements must be met to establish equitable estoppel: (1) a representation; (2) reliance; (3) a change of position; and (4) detriment. *Tidewater Beverage Services, Inc. v. Coca Cola Co.*, 907 F. Supp. 943 (E.D. Va. 1995). All four elements are present in Plaintiff's allegations. Defendant represented to Plaintiff that he would pay the mortgage payments, she relied on his representation and obtained the mortgage, thereby changing her position, and she has suffered financially.

Accordingly, the court hereby overrules Defendant's Demurrer as to Count I and II of Plaintiff's Bill of Complaint.

### Promissory Estoppel (Count III)

The doctrine of promissory estoppel has three elements: (1) the promisor should reasonably expect his promise to induce action or forbearance by the promisee, (2) the promise does induce such action or forbearance, and (3) enforcement of the promise is necessary to avoid injustice to the promisee. *Dulany Foods v. Ayers*, 220 Va. 502 (1979). Promissory estoppel, like estoppel *in pais*, is an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct. *Id.*

The doctrine of promissory estoppel has not been applied in Virginia, and the Supreme Court of Virginia has never officially adopted the doctrine of promissory estoppel as part of Virginia's common law. *Tuomala v. Regent Univ.*, 252 Va. 368 (1996); *see also Stone Printing & Mfg. Co. v. Dogan*, 234 Va. 163 (1987). Therefore, the court sustains the demurrer as to Count III for failing to state a cause of action under Virginia law.

*Express Partnership or Joint Venture (Count IV)*
*and Implied Partnership or Joint Venture Agreement (Count V)*

A partnership is an association of two or more persons to carry on as co-owners a business for profit and includes, for all purposes of the laws of this Commonwealth, a registered limited liability partnership. Virginia Code § 50-6(1). Since the Bill of Complaint does not allege that the parties were co-owners of a business for profit, it does not state a claim for breach of an express partnership.

A joint venture exists where two or more parties enter into a special combination for the purpose of a specific business undertaking, jointly seeking profit, gain, or other benefit, without any actual partnership or corporate designation. *Roark v. Hicks*, 234 Va. 470 (1987). The Bill of Complaint does not allege that the purchase of the Formula Boat was for the purpose of seeking profit. Thus, it does not appear to state a claim under a joint venture theory.

Therefore, Counts IV and V of the Bill of Complaint fail to state a cause of action under Virginia law.

### Conclusion

For the foregoing reasons, the court overrules the demurrers to Counts I and II of the Bill of Complaint and sustains the demurrers to Counts III, IV, and V.