# Richmond.

## ARKLA LUMBER AND MANUFACTURING COMPANY *v.* WEST VIRGINIA TIMBER COMPANY.

### April 22, 1926.

1. USAGES AND CUSTOMS—*Existence of Usage—Question for Jury.*—Whether a custom or usage exists is a question of fact to be determined by the jury under proper instructions from the court.

2. USAGES AND CUSTOMS—*Presumption of Knowledge of Usage—Parties Engaged in the Same Trade.*—Where both parties are engaged in the same trade, they will be presumed to have knowledge of all trade usages which are lawful and reasonable; and it is not necessary in such a case to prove actual knowledge, or that the usage is so general or universal that knowledge may be presumed.

3. USAGES AND CUSTOMS—*When Usage or Custom are Read into a Contract—Conflict of Laws—Place of Contract or Place of Performance—Case at Bar.*—The instant case was an action arising out of a contract for the sale of lumber. Defendants relied upon a custom of the trade that when lumber is shipped it should be "shipping dry." Both plaintiff and defendant were large buyers, sellers and manufacturers of lumber. The contract of purchase was consummated in St. Louis and it was insisted by plaintiff that no trade custom or usage could be invoked unless such custom or usage obtained in that city. This is not the true test. The usage or custom to be read into a contract is that which is recognized as such in the locality where the contract is to be performed—*i. e.*, not necessarily that locality where it was signed by the parties, but that locality with reference to which its terms are to be made effective; and, therefore, in the minds of the parties, the *locus contractus.*

4. CONFLICT OF LAWS—*Contracts—Place of Contract or Place of Performance.*—Everything relating to the making of the contract is to be governed by the law of the place where it was made; everything relating to the performance of the contract is to be controlled by the law of the place of performance.

5. USAGES AND CUSTOMS—*When Part of Contract—General Rule.*—Parol evidence is competent to annex to a contract a custom or usage of the business and locality known to the parties, or so generally and well settled as to be presumed to be known to them, and with reference to which they must be deemed to have contracted.

6. USAGES AND CUSTOMS—*Lumber Trade—Condition of Lumber when*

*Shipped—Shipping Dry—Appeal and Error—Conflict in the Evidence.*—In the instant case, an action by sellers of lumber against the purchaser, defendant asserted that there was a custom of the lumber trade in reference to the dryness of lumber, when no degree of dryness was specified in the order, that the lumber should be "shipping dry," and introduced evidence to the effect that the lumber in question was not "shipping dry." Plaintiff introduced evidence tending to prove that the lumber shipped under the contract was shipping dry. The evidence on this phase of this case was in irreconcilable conflict. The question was submitted to the jury under proper instructions and their finding for defendant is conclusive upon appeal.

7. Sales—*Damages—Profits—Where a Purchaser Had Resold the Subject of Sale which when Received was Unfit to Fill Purchaser's Contract.*—In an action by seller of lumber against the purchaser, the purchaser plead set off. The purchaser had resold the lumber and when delivered it proved to be in bad condition and upon plaintiff disclaiming interest, the purchaser sold the lumber for the best price he could get. As the price at which the purchaser before delivery had resold the lumber was undisputed, the difference between that price and the contract price sufficiently measured the purchaser's loss of profit. And such loss of profit was recoverable as the direct result of the breach of the contract of sale.

8. Damages—*Loss of Profit—General Rule.*—Profits lost by reason of a breach of contract, when they can be established with reasonable certainty, may be recovered.

9. Sales—*Damages—Loss of Profit—Instructions—Harmless Error—Case at Bar.*—In an action by a seller of lumber against the purchaser, the purchaser plead set off, and claimed damages for the loss of profit because he had resold the lumber which when delivered was found to be in bad condition. The court instructed the jury that if they found for the defendant they might award this loss of profit as a part of the damages. The jury denied the defendants the profits claimed.

*Held:* That the instruction, if erroneous, was not prejudicial to the plaintiff.

10. Sales—*Subject Matter of Sale not in Good Condition when Delivered—Resale by Purchaser.*—Where the seller of lumber, which was received by the purchaser in bad condition and not conforming to the contract of sale, declined to acknowledge any responsibility for its disposition, the purchaser may sell at the best market price which is presumably its value.

Error to a judgment of the Circuit Court of Orange county. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

*E. H. De Jarnette, Jr.*, for the plaintiff in error.

*Shackleford & Robertson*, for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

This is an action of assumpsit, in which the plaintiff sought to recover a judgment against the defendant for the balance claimed to be due on the purchase price of one car of Elm lumber. To this action, a special plea of set off under section 6145 of the Virginia Code was filed and a verdict returned and judgment entered against the plaintiff on the said special plea in the sum of $901.24. For the failure of the court below to set this verdict aside a petition was presented and a writ of error awarded.

Both parties to this litigation were engaged in manufacturing, buying and selling of lumber, the plaintiff with its chief office in St. Louis, Missouri; and the defendant with its principal office in Orange, Virginia.

On February 4, 1920, defendant wrote plaintiff for quotations on car of 10/4 1 common or better elm, and on the 7th of February received a reply offering to sell a car at $160.00 per M, f. o. b. Detroit. The following is a part of the correspondence:

"CHARLESTON, W. VA.
*February 4, 1920.*
"ARKLA LUMBER AND MANUFACTURING COMPANY,
St. Louis, Mo.
"GENTLEMEN:

"We are in the market for one or more cars 10/4 #1 common and better elm, and would be pleased to have you quote us on same, delivered f. o. b cars. Detroit, Mich., rate; shipping permit to be furnished for prompt shipment.

"Would also be pleased to have you quote on any other items of stock you have to offer in gum, elm, ash or oak.

"Yours respectfully,
"WEST VIRGINIA TIMBER COMPANY,
By J. W. JAMES."

*TELEGRAM.*

*"St. Louis, Mo., 2/7/20.*
"WEST VIRGINIA LUMBER COMPANY,
"*Charleston, West Va.*

"Yours fourth have on St. Louis yard for prompt shipment one car ten quarter elm very small per cent two common offer subject prior sale at one hundred sixty delivered Detroit.

"ARKLA LUMBER AND MANUFACTURING COMPANY."

*February 7, 1920.*
"WEST VIRGINIA LUMBER COMPANY,
"*Charleston, W. Va.*

"GENTLEMEN:

"In reply to your inquiry of the 4th instant we wired you this morning as follows:

" " 'Yours fourth have on St. Louis yard for prompt shipment one car ten quarter elm very small per cent two common offer subject prior sale at one hundred sixty delivered Detroit.'

"Which telegram we now beg to confirm, and you will understand that we take pleasure in offering you a carload of 10/4 #2 common and better elm (very small percentage #2 common) at $160.00 delivered Detroit.

"However, as we only have this one car and have other quotations out on same, we are compelled to make the offer subject to prior sale.

"Thanking you for the inquiry and hoping to hear favorably from you, we beg to remain.

"Yours very truly,

"ARKLA· LUMBER AND MANUFACTURING COMPANY".

*TELEGRAM.*

"*St. Louis, Mo., 2/10/20.*

"WEST VIRGINIA LUMBER COMAPNY,

"*Charleston, W. Va.*

"Entering order for ten quarter elm secure permit shipment from St. Louis via Wabash.

"ARKLA LUMBER AND MANUFACTURING COMPANY".

Shipping instructions were given on February 13th, and the lumber, 12,011 feet, was accordingly shipped promptly. Total purchase price for the car was $1,921.76 of which amount $1,200.00 was paid before the lumber reached its destination, leaving a balance due of $721.76 to be paid upon inspection and acceptance when it arrived in Detroit.

The car arrived at destination in due course, but upon inspection was found to be in bad condition as testified by Mr. Keith: "The lumber in the car was steaming; was hot; and you could smell the sourness of the lumber."

It was thereupon rejected, and the defendant company being unable to use it in its then condition, to fill the order for which it was purchased, had to pile it with sticks between the boards, until disposition could be made of it. Defendant refused to accept the car because it contended the lumber was green when loaded on car, whereas it should have been "shipping dry" at that time. This is the storm centre out of which the issues in this suit have arisen and about which there are sharp conflicts in the testimony.

This lumber was finally sold on the open market by defendant and brought the sum of $471.49.

In the trial of the case the jury had for consideration the statement of the plaintiff of $721.76 claimed to be due upon the original invoice, and the counter claim of defendant, set up in its special plea, of $1,612.95 which it asserted its right to recover against the plaintiff, because of the alleged breach of the contract on the part of the Arkla Company.

The plaintiff's bill of particulars is as follows:

"*Arkla Lumber Company*
          v.
"*West Virginia Timber Company,*
"Car 119649 C. B. & A.
"12,011 feet 2½" #2 common and better elm
     at $160.00 per thousand, f. o. b. Detroit,
     shipped February 9, 1920, via Wabash..... $1,921.78
"Less cash paid March 8, 1920........................ 1,200.00
"Balance due with interest............................... $   721.76
                    "Respectfully submitted,
                         "E. H. DEJARNETTE, JR."

The defendant's bill of particulars accompanying its special plea is as follows:

"*West Virginia Timber Company, Inc.*
          v.
"*Arkla Lumber Company, Inc.*
"Cash paid on account of damage paid prior
     to inspection of car of elm ..................... $1,200.00
"Freight and handling..................................... 124.73
"Storage and handling..................................... 48.00
"The difference between contract price and
     the price at which the car of elm purchased
     had been re-sold....................................... 240.24
                    "Total.................................. $1,612.95

together with interest on said amounts from the_____
day of February, 1920, until paid."

This statement was subject to a credit of $471.47 received after it was made up and filed, and was explained· in a supplemental or amended grounds of defense as having been received from the sale of the said car of lumber after this suit had been instituted.

From an inspection of the statement just above set out it is apparent that the jury accepted the defendant's theory of the case, and allowed its claim in full, less $240.22 claimed to be profit at which defendant had the lumber sold, at the time of its purchase and the sum of $471.49 received by defendant as the actual sale price for the lumber as finally sold on the open market.

Bill of exceptions No. 1, is as follows:

"The court erred in refusing to set aside the verdict against the Arkla Lumber and Manufacturing Company, and refusing to enter judgment for the Arkla Lumber and Manufacturing Company."

The defendant in reply brief says there are three questions to be determined in this case:

"First: Whether or not the lumber in question was reasonably merchantable lumber of the kind and quality ordered.

"Second: Whether or not the Arkla Company was bound by the custom or usage to ship lumber of this character at least as dry as shipping dry; and if so,

"Third: Whether or not the lumber in question was in fact shipping dry at the time of its shipment."

A proper answer to these question will, we think, determine whether or not the court erred in refusing to set aside the verdict of the jury rendered in favor of the West Virginia Timber Company.

The contract between the parties is entirely in writ-

ing and is admittedly silent as to whether the lumber should be dry, shipping dry or green, at the time of shipment. The defendant attempted to defend the action on the theory that where a certain grade of lumber is purchased to be shipped to another State, or locality, there is an implied warranty that it shall be of a merchantable grade and sufficiently dry to stand shipping without deterioration en route. This was sought to be read into the contract as a trade custom or usage, and the court submitted to the jury the issue thus raised in numerous instructions; five of which are here presented:

"(1) B. The court instructs the jury that there may be different customs and usages in different sections of the country and that the Arkla Lumber Company would not be bound by any custom or usage which would add to or vary the terms of its contract with the West Virginia Timber Company unless they had actual notice of such custom or usage, or unless the custom or usage was so general in the trade or business of buying and selling lumber that they will be presumed to have knowledge of such custom and usage."

"(8) B. The court instructs the jury that the contract sued on in this case is a written contract, and that the burden of proving a usage or custom of a trade in order to add to a written contract, rests upon the party relying on said alleged usage or custom.

"(9) B. The court instructs the jury that usually parol or verbal testimony is inadmissible to add to, alter or vary the terms of a written contract, but that it is permissible to prove the general usages and customs of a business in order to explain the meaning of a written contract; but that before testimony as to usages and customs of a business is allowed to add to the terms of a written contract, that it must be shown

that both parties to the contract knew of and recognized this custom when the contract was made or that the custom or usage was so general in the said business or trade, that both parties will be presumed to have known of said custom and usage and to have contracted with reference thereto."

"(3ax). The court instructs the jury that parol evidence is competent to annex to a written contract a custom or usage of the business and locality known to the parties, or so generally and well settled as to be presumed to be known to them, and with reference to which they must be deemed to have contracted.

"(4ax). The court instructs the jury that if they believe from the evidence that the car of elm involved in this case was ordered by description by the defendant from the Arkla Lumber Company and that the Arkla Lumber Company dealt in lumber of that description and accepted said order, and that the defendant had no opportunity of examining the lumber, then, there was, as a matter of law, an implied condition that the elm should be of merchantable quality."

These instructions, if there is evidence upon which to base them, embody correct principles of the law, and leave the determination of the issues, where they should be, with the jury.

[1] "Whether a custom or usage exists is a question of fact to be determined by the jury under proper instruction of fact to be determined by the jury under proper instructions from the court." *Craddock Mfg. Co.* v. *Faison*, 138 Va. 676, 123 S. E. 535; *North Shore Imp. Co.* v. *N. Y. P. & N. R. R. Co.*, 130 Va. 464, 108 S. E. 11; *Oriental Lumber Co.* v. *Blades Lumber Co.*, 103 Va. 740, 50 S. E. 270.

[2] "Where both parties are engaged in the same trade, they will be presumed to have knowledge of all

trade usages which are lawful and reasonable; and it is not necessary in such a case to prove actual knowledge, or that the usage is so general or universal that knowledge may be presumed." 17 C. J. 461; 27 R. C. L. 161-162; *Scott* v. *Chesterman*, 117 Va. 584, 85 S. E. 502.

The plaintiff and defendant were both large buyers, sellers, manufacturers and shippers of hard wood, the first named with its office in St. Louis, and the other a Virginia corporation—both generally speaking—buying in the same territory aud shipping to all sections of the country.

[3] The contract of purchase was consummated in St. Louis, and it is, therefore, insisted that no trade custom or usage can be invoked save such as obtain in that city. We think this is not the true test. On the contrary the true rule, supported by reason and authority, we understand to be, that the usage or custom to be read into a contract is that which is recognized as such in the locality where the contract is to be performed—i. e., not necessarily that locality where it was signed by the parties, but that locality with reference to which its terms are to be made effective; and, therefore, in the minds of the parties, the *locus contractus.*

[4] "More generally the rule may be thus stated: Everything relating to the *making* of the contract is to be governed by the law of the place where it was made; everything relating to the *performance* of the contract is to be controlled by the law of the place of performance." Minor's Conflict of Laws, section 155; *Scudder* v. *Bank*, 91 U. S. 405, 412, 413, 23 L. Ed. 245; *Akers* v. *Demond*, 103 Mass. 318, 324.

[5] "Parol evidence is competent to annex to a contract a custom or usage of the business and locality known to the parties, or so generally and well settled as to be presumed to be known to them, and with refer-

ence to which they must be deemed to have contracted." *Scott* v. *Chesterman*, 117 Va. 597, 85 S. E. 507.

[6] On this question there was a conflict of testimony which made the determination of the issue distinctly a jury question. The testimony of Alfred F. Keith fairly illustrates the character of the evidence introduced on behalf of the defendant:

"Q. 23. Will you please state to the jury whether or not there is any well recognized custom or usage in the lumber trade with reference to the dryness of lumber when no degree of dryness is specified in the order?

"A. It is customary to ship lumber that is 'shipping dry' unless it is so stated in the order.

"Q. 23. Mr. Keith, what are the different degrees of dryness of lumber? How are they termed in the lumber trade?

"A. Green, shipping dry; some use the term thoroughly dry or bone dry; and also kiln dry.

"Q. 27. Now, will you please state to the jury what the condition of lumber is that is termed 'shipping dry' and how it is made 'shipping dry?'

"A. In good drying weather, lumber will be called 'shipping dry' in about three months on inch stock; on thick stock it will take much longer."

The plaintiff introduced evidence tending to prove that the lumber shipped under the contract was shipping dry, and, therefore, they were entitled to recover, even admitting the custom or usage of the trade to have been established. We think there was ample evidence upon which the jury might have returned a verdict in accord with the plaintiff's contention, but on this phase of the case there was irreconcilable conflict and the question was submitted to the jury by the following instruction:

"(2ax). The court instructs the jury that extrinsic

evidence is admissible in the construction of a mercantile contract to show that phrases and terms used in the contract have acquired by the custom of the markets in which the parties transacted their business peculiar signification not attached to them in ordinary use, and if they believe that lumber in this case bought on 'grade No. 2 common and better very little No. 2' should by such custom or usage be when shipped at least as shipping dry and was not so they shall find for the defendant, such damages, if any, as they shall believe from the evidence defendant has suffered by reason of said lumber not so being as dry as shipping dry."

Whether the lumber was shipping dry or green when loaded on the car for shipment was thus presented to the jury, and their finding on this question is conclusive upon this court, when the conflicting testimony introduced on the trial is considered.

[7] The third assignment of error relates to the giving of an instruction which told the jury might award as a part of the damages claimed by the defendant in its special plea the difference between the price at which the lumber was bought and the price for which it was sold to the Model Body Corporation.

The lumber was purchased for $160.00 per tousand and was sold by defendant for $180.00 per thousand feet, the difference being $240.22. These facts are not disputed, and it would seem, therefore, that if the jury was justified in finding for the defendant on its counter claim, then this loss of profit was sufficiently certain to be recovered as a direct result of the breach of the contract of sale.

[8] It would seem unnecessary to cite authorities sustaining the right to recover profits lost by reason of a breach of contract, when they can be established with reasonable certainty. *Lehigh, etc., Co.* v. *Va. S. S. Co.*, 132 Va. 257, 111 S. E. 104; 8 R. C. L. page 452.

[9] An examination of the items of the claim set out in the special plea which aggregates $1,612.95 is admittedly to be credited with $471.49 from the sale of the damaged lumber, this deducted from the $1,612.95 leaves $1,141.46. The jury's verdict was for $901.24, exactly $240.22 (the profit) less than was claimed. It is manifest that the jury denied the defendant the profit claimed, and therefore the instruction objected to, if erroneous, was not prejudicial to the plaintiff's interest, in so far as it related to the profits sought to be recovered.

[10] So far as the record discloses, the lumber was sold for the best price obtainable. The plaintiff declined to acknowledge any responsibility for its disposition, and nothing was left for the defendant but to sell at the best market price, which is presumably its value.

The remaining assignments have to do with the admission of certain expert evidence; an excerpt from the American Lumberman with reference to the "shipping weights" of lumber, and statements of witnesses showing for what purpose the lumber was to be used, this last with the view of recovering for the profits resulting from a resale.

We have carefully considered each of these assigned errors and are of the opinion they are without merit.

There is in this case a greater number of instructions than necessary, an observation that can be made in connection with many jury trials, but we think the issues were fairly submitted to the jury, and their findings not being plainly wrong, or without evidence to support them, must be affirmed.

*Affirmed.*