The Clerk is directed to send a copy of this Order to all counsel of record.

**JOHN DEERE CONSTRUCTION EQUIPMENT CO., Plaintiff,**

v.

**WRIGHT EQUIPMENT CO., INC., Defendant.**

**No. 1:00CV00021.**

United States District Court, W.D. Virginia, Abingdon Division.

Oct. 3, 2000.

---

Wade W. Massie, Penn, Stuart & Eskridge, Abingdon, VA, for John Deere Construction Equipment Co., plaintiff.

Barrett Erskin Pope, Durrette, Irvin & Bradshaw, Richmond, VA, for Wright Equipment Co., Inc., defendant.

## OPINION

JONES, District Judge.

In this declaratory judgment action, I hold that the law of Maryland, rather than Virginia, applies to the subject supplier-dealer contracts, and thus the termination of the contracts was valid.

### I

John Deere Construction Equipment Co. ("Deere") seeks an adjudication of its right to terminate two dealer contracts with Wright Equipment Co., Inc. ("Wright").[1] The contracts, originally entered into in 1984, are between Deere, a manufacturer and supplier of utility and forestry equipment, and Wright, a local authorized dealer of such equipment. One contract governs the relationship as to utility equipment, and the other as to forestry equipment. The contracts are identical except for the terms "utility" and "forestry."[2]

On December 13, 1999, Harold Wright, the president, founder, and major shareholder of Wright, died. Mr. Wright's will left his property to a trust. Representatives of Deere met with the trustees on January 21, 2000, and revealed Deere's intention to terminate the contracts. By letters dated January 31, 2000, Deere sent notices of termination regarding both contracts to Wright. The letters asserted that both contracts would be terminated on July 31, 2000, 180 days following the date the notices were sent.

---

1. Pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201 (West 1994). Jurisdiction of this court exists because of diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332 (West 1993 & Supp.2000).

2. The contracts are both entitled "John Deere Industrial Equipment Company Authorized Industrial Dealer Agreement." The original contracting party was John Deere Industrial Equipment Company, the predecessor to the present plaintiff.

The notification relied on four reasons for termination. First, Deere stated that the agreements were terminable because Mr. Wright, the major shareholder and president, had died, and no qualified heir had come forward to control the business. Second, Deere contended that it "no longer offers Agreements of this type." Third, Deere maintained that Wright had not generated sufficient sales to continue the agreements. Finally, Deere cited to the contracts themselves, stating that either party had the "right to terminate, with or without cause, upon at least 120 days written notice." (Letter from Deere to Wright, 1/31/00, at 3.)

Wright contests Deere's right to terminate Wright's appointment as an authorized dealer. Wright contends that the Virginia Heavy Equipment Dealer Act, Va. Code Ann. §§ 59.1–353 to –363 (Michie 1998) ("Virginia Act"), applies to the relationship established by the contracts and precludes termination of the appointments without cause. Wright further contends that there is no cause for termination within the meaning of the Virginia Act. On the other hand, Deere asserts that the Virginia Act does not apply because the contracts are governed by Maryland law; that even if Virginia law applies, there was cause for termination; and that in any event, the Virginia Act is unconstitutional as applied to the contracts.

3. In addition to Deere and Wright, the parties include the Commonwealth of Virginia, which has intervened solely for the purpose of supporting the constitutionality of the Virginia Act. See 28 U.S.C.A. § 2403(b) (West 1994); Fed.R.Civ.P. 24(c).

4. At an earlier point in the case I denied Wright's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim and also denied its motion to abstain. I further denied Deere's first motion for summary judgment in order to permit discovery in the case. Such discovery did occur and transcripts of discovery depositions have been filed as part of the summary judgment record. The parties agreed that Deere might continue to supply Wright under the contracts after July 31, 2000, the purported termination date, while the case was under submission to the

The parties[3] are agreed that there are no contested issues of material fact and that I may enter judgment on the record as it now exists. The issues have been briefed and argued and the case is ripe for decision.[4]

## II

The determinative question for resolution is whether Virginia law applies to the contracts. In diversity cases such as this, a federal court must apply the law of the forum state, including its choice of laws principles. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, I must examine Virginia's choice of laws rules as applied to the contracts in this case in order to determine which substantive law to apply.[5]

The contracts contain a provision that effectively allows Deere to terminate the appointment of Wright as an authorized dealer without cause. The provision provides, in pertinent part, that the appointment "shall continue until it is terminated by one or both of the parties ... by written notice by either [Deere] or [Wright] to the other party given at least one hundred twenty (120) days prior to the effective date specified in such notice." (Contracts § 3(b).) Moreover, the contracts provide for immediate termination upon notice in

court for decision, without prejudice to the respective positions of the parties.

5. In order to determine state law, I must follow the decisions of the state's highest court, or, where the law is unclear, predict how that court would rule, based on "recent pronouncements of general rules or policies ...," among other things. See *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir.1999). The Virginia Supreme Court has not recently elaborated on its contract choice of laws rules, and indeed has avoided such issues. See *Hughes v. Cole*, 251 Va. 3, 465 S.E.2d 820, 826 (1996) (declining to decide correctness of trial court's ruling that law of place of making of contract (North Carolina) applied to determine validity of agreement to split Virginia lottery winnings).

the event of the "[d]eath of an individual proprietor, partner, major shareholder, or the manager of the dealership." (*Id.* at § 2(a).) The Virginia Act provides, however, that "[n]otwithstanding the terms, provisions or conditions of any agreement, no supplier shall unilaterally amend, cancel, terminate or refuse to continue to renew any agreement, unless ... good cause exists for amendment, termination, cancellation, nonrenewal, [or] noncontinuance...." Va.Code Ann. § 59.1–354.A (Michie 1998). "Good cause" is limited to "dealer performance deficiencies." *Id.*

The specific choice of law question presented is whether the Virginia Act applies to these contracts. If it does, and if it is enforceable, then Deere was required to have had good cause other than the death of Harold Wright in order to terminate Wright's appointment as an authorized dealer.

■ Virginia is said to follow "traditional" contract choice of law principles. *See Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238, 241 (4th Cir.1995).[6] The general rule is that the nature, validity, and interpretation of a contract is governed by the law of the place where it was made, unless there is an express intention to the contrary. *See Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 469 S.E.2d 61, 63 (1996); *C.I.T. Corp. v. Guy*, 170 Va. 16, 195 S.E. 659, 661 (1938). In the present case, the contracts were made in Maryland, where Deere signed them, thus completing the final act necessary to make them binding. *See Christian v. Bullock*,

215 Va. 98, 205 S.E.2d 635, 638 (1974) (holding that construction of written contract governed by law of place of signing).[7]

Wright relies on an older Virginia case, *Poole v. Perkins*, 126 Va. 331, 101 S.E. 240 (1919), which held that where a contract is to be performed in a state other than the one in which it was made, it will be presumed that the parties intended the law of the place of performance to govern. *Id.* at 242. In that case Mrs. Poole made and delivered a promissory note in Tennessee, where she and her husband were domiciled. The law in force in that state at the time made the contracts of a married woman voidable. The note was payable in Virginia, however, and when it was unpaid, suit was filed in Virginia, where Mrs. Poole had the capacity to enter into such a contract. Virginia's highest court held the validity of the note was to be determined by Virginia law, where the contract was to be performed and that Mrs. Poole's defense of incapacity was accordingly invalid. *Id.* at 245.

The *Poole* decision "met with almost universal criticism," Note, *Conflict of Laws—What Law Governs the Validity of a Contract in Virginia*, 26 Va. L.Rev. 969, 970 (1940), and the holding has been rejected by another federal district judge in Virginia as "no longer valid." *Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F.Supp. 1415, 1418 n. 10 (E.D.Va.1988) (Ellis, J.). In effect, *Poole* sought to establish a place of performance rule for contracts, since under its rationale the law of the place of contracting only applies if

6. The "modern" rule as set forth in the second restatement of laws provides that the law of the state applies which, with respect to the particular issue under consideration, has the "most significant relationship to the transaction." *See* Restatement (Second) of Conflict of Laws § 188 (1969). There is no indication that the Virginia Supreme Court would follow this approach, and in fact it has expressly rejected the similar rule established by the second restatement in tort actions. *See McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662, 664 (1979).

7. The contracts themselves provide that they shall become effective "upon execution by [Deere]." (Contracts, Preface.) Wright claims that the contracts were made in Virginia because Deere's annual price lists were received by Wright in Virginia. However, it is clear that the contracts were made in 1984 and not annually, when the price lists were issued. Similarly, the fact that a fifth county was later added to the dealer territory by letter amendments last signed by Wright in Virginia did not constitute a novation of the contracts.

the place of contracting and the place of performance both occur in the same state.

*Poole* is not supported by more recent cases of the Virginia Supreme Court, although it has never been expressly overruled. Indeed, it has been cited only once by that court, and then only for the proposition that the contractual intent of the parties as to choice of law ought to be given effect. *See Tate v. Hain,* 181 Va. 402, 25 S.E.2d 321, 324 (1943).[8]

■ Another traditional rule is that matters of contract performance are to be considered under the law of the place of performance, if different from the place of contracting. *See* Restatement (First) of Conflicts of Laws § 358 (1934). This principle finds support in Virginia law. *See Arkla Lumber & Mfg. Co. v. West Va. Timber Co.,* 146 Va. 641, 132 S.E. 840, 842 (1926). Wright does not argue, however, that the application of the Virginia Act involves a question of contract performance. Its argument is one of contract validity.

Moreover, there is no indication that the parties intended Virginia law to apply to the contracts. While Wright's authorized location and "area of responsibility" as an authorized dealer was in Virginia, the contracts do not preclude the possibility that Deere's obligations might be performed outside of Virginia. In fact, Deere has established that it performs certain of its obligations under the contracts in four other states besides Virginia. For example, under the contracts Deere has the responsibility (under certain conditions) to accept orders for the purchase of goods placed by the dealer, and the evidence shows that such acceptance occurred in Iowa, where the goods are manufactured. Thus, even if the holding in *Poole* were applied to this case, I cannot find that the parties intended that Virginia law govern the validity of the termination provisions of the contracts.

■ For these reasons, the correct choice of law is Maryland, where the contracts were made. Accordingly, it is not necessary or proper for me to determine the constitutionality of the Virginia Act, since it does not apply.

### III

Maryland also has legislation governing contracts such as these, known as the Maryland Dealer Contract Act. *See* Md.Code Ann., Com. Law §§ 19–101 to 505 (2000) ("Maryland Act"). As amended in 1998, the Maryland Act generally prohibits a supplier like Deere from terminating a contract with a dealer like Wright without good cause. *See* Md.Code Ann., Com. Law § 19–301(c)(2) (2000). However, good cause is not required under certain specified circumstances, one of which is "[t]he withdrawal of an individual proprietor, partner, major shareholder, or manager of the dealership, . . . without the prior written consent of the supplier." Md.Code Ann., Com. Law § 19–302(7) (2000).

■ The plain language of the Maryland Act permits the termination of the contracts under the circumstances here, namely, the withdrawal by death of Harold Wright, the major stockholder of Wright. The Maryland Act requires 180 days prior notice of termination, *see* Md.Code Ann., Com. Law 19–304 (2000), and such notice was given by Deere, although the contracts themselves only require 120 days notice. Accordingly, I find that the termination of Wright as a dealer complied with Maryland law.

### IV

For the foregoing reasons, the plaintiff's motion for summary judgment will be granted and a declaratory judgment en-

---

8. Wright also cites the even older case of *Nickels v. People's Building, Loan & Sav. Ass'n,* 93 Va. 380, 25 S.E. 8 (1896), but it has received the same criticism as *Poole. See Chesapeake Supply & Equip. Co.,* 700 F.Supp. at 1418 n. 10.

tered that the contracts were validly terminated effective July 31, 2000.

