**In re David Reginald POLI and Jane Auby Poli, Debtors.**

**Marvin Q. Sanner, Plaintiff,**

**v.**

**David Reginald Poli and Jane Auby Poli, Defendants.**

**Bankruptcy No. 00–13723–RGM. Adversary No. 01–1050.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

May 30, 2003.

Malcolm M. Mitchell, Jr., Vorys, Sater, Seymour and Pease, LLP, Alexandria, VA, for plaintiff.

Spencer D. Ault, Young & Ault, Leesburg, VA, for debtors.

James W. Reynolds, Odin, Feldman & Pittleman, Fairfax, VA, for trustee.

### *MEMORANDUM OPINION*

ROBERT G. MAYER, Bankruptcy Judge.

Marvin Q. Sanner filed a complaint alleging that David R. Poli and Jane A. Poli breached a real estate sales contract and that they should be denied their discharge. Motions for summary judgment were granted denying the debtors their discharges and finding that they breached the real estate sales contract. At a further hearing, Sanner proved his damages in the amount of $105,335.44. He also sought in prejudgment interest, $168,698.83 in attorney's fees and $10,126.89 in costs. The court requested briefs as to the prejudgment interest, attorney's fees and costs.

### I. Prejudgment Interest

#### A. Choice of Law

■ The issues presented first require the determination of the appropriate law to be applied and whether the additional relief requested are matters of substantive law or matters of procedure. A federal court sitting in a diversity case applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This rule extends to bankruptcy courts which are often presented with situations where the Bankruptcy Code incorporates issues that are the subject of state law. When faced with this issue—whether state or federal law applies in a bankruptcy context—the Fourth Circuit held that "in the absence of a compelling federal interest which dictates otherwise, the *Klaxon* rule, should prevail where a federal bankruptcy court seeks to determine the extent of a debtor's property interest." *In re Merritt Dredging Company, Inc.*, 839 F.2d 203, 206 (4th Cir.1988). Applying these principles, the bankruptcy court must apply the choice of law rules of the forum state, here Virginia, to determine which state law applies to the issue of prejudgment interest.

■ Virginia choice of law rules establish Pennsylvania law as governing law. The Virginia Supreme Court summarized the rule in *Arkla Lumber & Mfg. Co. v. West Virginia Timber Co.*, 146 Va. 641, 650, 132 S.E. 840, 842 (1926) by quoting Minor's Conflict of Laws, § 155:

> Everything relating to the *making* of the contract is to be governed by the law of the place where it was made; everything relating to the *performance* of the contract is to be controlled by the law of the place of performance.

(emphasis in original). This remains the rule in Virginia. *Equitable Trust Company v. Bratwursthaus Management Corporation*, 514 F.2d 565 (4th Cir.1975) (hold-

ing that under Virginia law the place of performance governs questions arising in connection with the performance of a contract); *Madaus v. November Hill Farm, Inc.*, 630 F.Supp. 1246 (W.D.Va.1986); *Occidental Fire & Cas. Co. v. Bankers & Shippers Ins. Co.*, 564 F.Supp. 1501 (W.D.Va.1983). A contract breach is a performance issue and is governed by the law of the place of performance. *Sneed v. American Bank Stationary Co.*, 764 F.Supp. 65, 67 (W.D.Va.1991). The contract in this case was for the purchase of real property situate in Pennsylvania. Closing was to have occurred in Pennsylvania. The failure to close constituted a breach of the contract and is a performance issue. Consequently, Pennsylvania law governs. The same result would follow if this were an issue relating to the making of the contract. A contract is made where the last act necessary to create a binding contract taken. While the evidence is not entirely clear as to where the contract was last executed, it does reflect that the Polis executed it first on August 30, 1997, and that Sanner as the seller accepted it without alteration the following day. Sanner's address recited in the contract was the property address. The property is a single family residence. It is reasonable to conclude that Sanner lived in Pennsylvania, was the last party to execute the contract and executed the contract in Pennsylvania.

### B. Application of Pennsylvania Substantive Law

■ Prejudgment interest is a substantive component of contract damages under Pennsylvania law. *See Kroblin Re-*

*frigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 109 (3d Cir.1986). In breach of contract cases, prejudgment interest is a matter of right, calculated from the time the money became due or payable. *Francisco v. United States*, 267 F.3d 303, 308 (3d Cir.2001); *Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 76, 421 A.2d 1151, 1154 (Pa.Super.1980)("In a contract action the award of such interest does not depend upon discretion but is a legal right."). Interest on the whole amount due accrues at the time tender was due. *See Gold & Co.*, 281 Pa.Super. at 77, 421 A.2d at 1155. The purpose of prejudgment interest is to compensate plaintiffs for the loss sustained by not having received the entitled amount at the time that it should have been received. Such an award places the plaintiff in the position he would have occupied had the party at fault fulfilled its contractual obligation. *Girard Bank v. John Hancock Mut. Life Ins. Co.*, 524 F.Supp. 884, 897 (E.D.Pa.1981) (allowing prejudgment interest at the legal rate from the date the payment is wrongfully withheld where the damages are liquidated and certain and the interest is readily ascertainable through computation).[1]

■ Pennsylvania law provides for payment of interest pursuant to 41 Pa. Stat. § 202, which applies a 6% rate to contract matters where parties have not specified another rate and where prejudgment interest is awarded. *Carroll v. City of Philadelphia, Board of Pensions and Retirement Municipal Pension Fund*, 735 A.2d 141, 146–47 (Pa.Cmwlth.1999).

The settlement date was to have been November 30, 1997. Sanner would have

---

1. The rule is the same under Virginia law. *Willard v. Aetna Casualty & Surety Co.* 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973); *Marks v. Sanzo*, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986) (holding that prejudgment interest is a matter of substance in Virginia

for which the rule of *lex loci* applies); *Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614, 633 (4th Cir.1999) (prejudgment interest is a matter of state substantive law); *Thornhill v. Donnkenny, Inc.,* 823 F.2d 782, 787 (4th Cir.1987).

netted from the closing, after the real estate commissions and other costs, $1,057,524.50. This amount must be credited with payments that Sanner received when he later sold the personal property and the real estate. Sanner sold the personal property at auction and received $15,457.00 about February 20, 1998, and $8,950.25 on May 28, 1998. The second contract for the sale of the real estate closed on December 11, 1998. Consequently, prejudgment interest will be awarded at a rate of 6% on $1,057,524.50 from November 30, 1997, through February 20, 1998; on $1,042,067.50 from February 21, 1998, through May 28, 1998; on $1,033,117.25 from May 29, 1998, through December 11, 1998; and on $105,335.44 from December 12, 1998, through May 29, 2003, the date of judgment. The total amount of prejudgment interest is $92,550.97.

## II. Postjudgment Interest

The question whether postjudgment interest is substantive or procedural is settled law. The Fourth Circuit held that postjudgment interest is procedural, rather than substantive. In diversity actions federal law, rather than state law, governs an award of postjudgment interest. *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir.1989). Because postjudgment interest is procedural rather than substantive law, the federal judgment rate as set forth in 28 U.S.C. § 1961 applies to postjudgment interest awards in the bankruptcy context.

## III. Attorney Fees

Sanner requested an award of attorney's fees of $13,510.00 for pre-bankruptcy work and $155,188.83 for post-bankruptcy work. The sales contract between Sanner and the Polis contained no provision for attorney fees. The generally applicable American rule is that absent a contractual or statutory provision to the contrary, a prevailing party is not entitled to recover attorney fees from the losing party. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999); *Merlino v. Delaware County*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999) ("[T]here can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception."); *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991). Sanner sets forth three alternative arguments for recovery of his attorney fees: (1) the court should follow the rule set forth in *Hiss v. Friedberg*, 201 Va. 572, 112 S.E.2d 871 (1960); (2) the court should impose sanctions under 42 Pa.Stat. § 2503(7), (9), F.R.Bank.P. 9011 or F.R.Bank.P. 7056; or (3) the court should award attorney's fee because Sanner conferred a benefit on the estate.

### A. Hiss v. Friedberg

Sanner urges the court to follow the exception to the rule general rule of *Mullins v. Richlands Nat'l Bank* as set forth in *Hiss v. Friedberg*, a Virginia Supreme Court decision. It holds that an award of attorney's fees is proper when, as a result of defendant's breach of contract, expenses of collateral litigation are incurred with a third party provided that the employment of counsel is a direct and necessary consequence of the defendant's breach of contract. *Hiss*, 201 Va. at 577–78, 112 S.E.2d at 875–76. However, "The rule just stated does not deal with the cost of litigation with the defendant himself." *Hiss*, 201 Va. at 578, 112 S.E.2d at 876.

There are two problems with Sanner's argument. First, if *Hiss* is considered a substantive rule of law because it determines the manner in which damages are

calculated in a breach of contract case and the extent of the damages, it is not applicable in this case. Pennsylvania substantive law governs, not Virginia law. The discussion in *Hiss* reveals that the award of attorney's fees incurred in litigation with third parties arising from a breach of a contract with the defendant are elements of the damages incurred by the plaintiff arising from the breach of the contract. As such, they are an element of substantive law. *Hiss,* which is a Virginia exception, is not applicable because Pennsylvania law governs.

In any event, assuming that Pennsylvania has a comparable exception, the *Hiss* rule only applies to cases where the breach of contract forces the plaintiff to maintain or defend a suit with a third party. *See Hiss,* 112 S.E.2d at 876. Sanner argues that because this is a bankruptcy case, a bankruptcy trustee is necessarily involved and the *Hiss* rule is applicable. However, the trustee was not a party to Sanner's suit. The suit was against the Polis, not the bankruptcy estate. It sought to deny the Polis their discharges and to recover a judgment against them for breach of the contract. The trustee was neither a necessary nor a proper party to the contract action. The trustee brought his own separate adversary proceeding seeking a denial of the Polis' discharge. The two adversary proceedings were consolidated as to the discharge matters. Sanner and the trustee were not adversaries but allies in the consolidated proceeding. There was, therefore, no third party against whom Sanner litigated.

The Polis' breach of the real estate contract did not itself require the discharge action. The filing of the bankruptcy petition and their conduct during the bankruptcy case permitted the filing of the discharge action. It was based on conduct other than the breach of the contract.

The mere breach of the contract would not have resulted in the denial of the Polis' discharges and the filing of the petition in bankruptcy did not constitute a breach of the real estate contract. The *Hiss* exception is not applicable in these circumstances.

### B. Pennsylvania Law, 42 Pa.Stat. § 2503

If Pennsylvania substantive law permits the recovery of attorney's fees as a part of the damages that Sanner is entitled to recover for the breach of the contract, an award of attorney's fees could be made. Sanner suggests that 42 Pa. Stat. § 2503 is such a statute. Under this statute, participants to litigation can be awarded fees "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter" or "because of the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.Stat. § 2503(7), (9). Sanner asserts that such awards are appropriate where the losing party acts in bad faith, vexatiously, wantonly, or oppressively. *Kulp v. Hrivnak,* 2000 Pa.Super. 407, 765 A.2d 796 (Pa.Super.2000); *Richland School District v. Richland Education Association,* 124 Pa.Cmwlth. 459, 461, 556 A.2d 531, 532–33 (1989) (defining vexatious conduct as that which is "instituted without sufficient grounds and serving only to cause annoyance"); *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Benny Enterprises, Inc.,* 669 A.2d 1018, 1022 (Pa.Cmwlth. 1995) (providing for award of counsel fees where party acts in bad faith, including acts of fraud, dishonesty or corruption; amount of attorney's fees disproportionate to amount in controversy which was *de minimis*).

The Pennsylvania statutory provision advanced by Sanner as a basis for attorney fees is inapplicable in this case because it is procedural, not substantive law. Under *Erie* and its progeny, choice of law rules require the bankruptcy court to make a distinction between substantive and procedural law. The state statute proposed by Sanner is found in Title 42 of the Pennsylvania Statutes, which governs the Judiciary and Judicial Procedure. It applies to an award of counsel fees as part of the "taxable costs of the matter." 42 Pa.Stat. § 2503. This rule does not affect the substantive rights to the parties, but rather provides a structure for imposing sanctions on the parties when the Pennsylvania court's procedural rules are not followed. Rather than arising from the breach of the contract, it arises from the conduct of the litigation. As such, the statutory provision is procedural law. It would be inappropriate for a federal court to award attorney's fees based on a Pennsylvania statute regulating conduct within the state courts.

### C. Federal Rule of Bankruptcy Procedure 9011

In the absence of a substantive Pennsylvania statute providing for recovery of attorney fees as a part of the contractual damages, this court must look to federal procedural rules to determine whether an award of attorney fees is appropriate. Here, Sanner contends that attorney fees are expressly authorized by F.R.Bankr.P.

9011[2]. *See Stuebben v. Gioioso,* 979 F.2d 956 (3rd Cir.1992).

Sanner's initial complaint only objected to the Polis' discharges. It alleged that they concealed a bank account, placed postpetition encumbrances against their Mesa, Arizona real property in favor of family members, failed to maintain their financial records and made numerous false oaths in their schedules, including understating the value of their residence, overstating the value of the liens on the Mesa, Arizona real property, failing to list all bank accounts and an escrow account with the mortgage company[3], omitting addresses or providing incomplete or partial addresses for certain creditors and scheduling certain credit card obligations as disputed when, in fact, they had been paid. Sanner requested that their discharges be denied and that he be awarded his attorney's fee, relying on 11 U.S.C. § 105, 28 U.S.C. § 1927 and F.R.Bankr.P. 9011. The complaint was later amended to add other discharge allegations and to add a second count asking for judgment in the amount of $245,712.53 for breach of the Pennsylvania real estate contract. No attorney's fees were requested in the second complaint. Sanner now requests attorney's fees of $155,188.83 for the adversary proceeding.

It appears that Sanner is arguing that inaccurate, incomplete or false schedules can be the basis for a Rule 9011 sanction. Rule 9011 does not encompass

---

**2.** Sanctions, including reasonable attorneys' fees, are imposed pursuant to Rule 9011(c), "after notice and a reasonable opportunity to respond, [where] the court determines that subdivision (b) has been violated." Rule 9011(b) refers to representations to the court and provides that an attorney or unrepresented party who presents a "petition, pleading, written motion or other paper" to the court certifies to the best of his or her knowledge that it is not being presented for improper

purpose; that the claims, defenses and other legal contentions are warranted; that the allegations and other factual contentions have evidentiary support; and that any denials of factual contentions are warranted on the evidence. Fed. R. Bankr.P. 9011.

**3.** The mortgage company was holding insurance proceeds pending repairs to the Mesa, Arizona real property.

all conduct within judicial proceedings; it pertains only to a "petition, pleading, written motion, and other paper except a list, schedule, or statement, or amendments thereto." F.R.Bankr.P. 9011(a).[4] To the extent that Sanner seeks a sanction for matters contained in the schedules or in any list or statement or any amendment, the matters are outside the scope of Rule 9011. This result is supported by the purpose of Rule 9011 and the separate remedy available for the inaccurate, incomplete or false schedules. The purpose of Rule 9011 is to deter baseless filings. *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). It was not designed to supercede the American rule and to shift attorney's fees from the prevailing party to the losing party. Sanctions are limited by the rule to those that are "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." F.R.Bankr.P. 9011(c)(2). Here, there is a greater sanction available under 11 U.S.C. § 727, the denial of a debtor's discharge. Consequently, the exclusion of schedules, lists and statements from the ambit of the rule does not leave parties without remedies or debtors without penalties. It does, however, prevent the shifting of attorney's fees to the debtor if he loses. Congress could have provided for attorney's fees in discharge cases if it had intended to do so. It provided a limited attorney's fee shifting provision in 11 U.S.C. § 523(d). There is no comparable provision in 11 U.S.C. § 727. The plain language of Rule 9011, the availability of other remedies for inaccurate, incomplete or false schedules and the different treatment of attorney's fees in 11 U.S.C. §§ 523(d) and 727 require Sanner to base his Rule 9011 motion on some violation other than inaccurate, incomplete or false schedules.

■ Sanner does not adequately describe the specific conduct alleged to violate Rule 9011 as required by Rule 9011(c)(1)(A). It should be noted that Rule 9011 contains a safe harbor provision that is intended to further the purposes of the rule by effecting prompt cures of violations by permitting the offending document to be amended or withdrawn before sanctions become available. This mechanism, which does not appear to have been followed in this case, also permits the court to focus on the specific conduct that is alleged to violate Rule 9011. It is true that Sanner notes in his motion numerous statements by the court at various hearings that reflect negatively on the Polis. However, all were made in the context of different motions, such as motions to convert the case from chapter 13 to chapter 7 or to dismiss the case; objections to the confirmation of the debtors' chapter 13 plan; and an order to show cause why the debtors ought not be held in contempt. Those findings and comments do not necessarily dictate a finding of a violation of Rule 9011. At best, for purposes of the present motion, they reveal debtors who, in attempting to solve their financial woes through bankruptcy crossed over the line of what is permissible to what is not permissible. They were sanctioned for these infractions and lost their discharges. But, the findings and comments do not identify and may not relate to the specific conduct that might violate Rule 9011(b).

■ At best, Sanner relies on Rule 9011(b)(1) and the totality of the conduct to show an improper purpose, that is, to harass or cause unnecessary delay. How-

---

4. Rule 9011 also does not apply to discovery requests, responses, objection and motions that are subject to the provisions of F.R.Bankr.P. 7026 through 7037. There are separate remedies for discovery abuses.

ever, after having reviewed the pleadings, transcripts and time records, most of the time expended appears to have been for activities that would normally have been expected in this case and not proximately related to a motive to harass or cause unnecessary delay. The debtors raised defenses, most of which are not unusual for such cases. They required the court to make credibility judgments which were adverse to the Polis. However, losing defenses is not the same as having presented them for improper purposes. This difficulty is illustrated by the inability of the court to determine what time entries flow from such a violation. Sanner submitted all of his attorney's time records. They cover the attorney's entire representation during the bankruptcy proceeding.[5] Of the $155,188.83 requested for postbankruptcy legal fees, about $31,300.00 was incurred before this adversary proceeding was commenced. Some of the time expended by Sanner's attorneys after the adversary proceeding was filed was not within the adversary proceeding. Some could be attributed to either the bankruptcy case or the adversary proceeding. The time expended that related to the adversary proceeding concerned the underlying contract claim—which was independent of the complaint to deny the Polis their discharges—and the discharge. The court cannot reasonably determine what attorney's fees, if any, that were the "direct result of the violation." Rule 9011(c)(2). Rather, it appears that Sanner seeks to use Rule 9011 not to police misconduct, but to shift counsel fees from the plaintiff to the defendant. Resort to Rule 9011 is appropriate if Rule 9011 is violated, not simply because Sanner prevailed. *In re Kunstler*, 914 F.2d 505, 522 (4th Cir.1990)

("It is clear that Rule 11 should not blindly be used to shift fees.").

■■■■■■ *In re Kunstler* discusses at length the sanctions that should be awarded under F.R.Civ.P. 11, which is substantially the same as F.R.Bankr.P. 9011. *Id.* at 522–25. The Court of Appeals set out four factors to be considered: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the rule 11 violation." *Id.* at 523. Here, the court is unable to determine the reasonableness of Sanner's attorney's fees. While counsel provided all of his time records, the court is unable to discern which entries directly result from any alleged violation. This is not intended to suggest that the appropriate sanction is the amount necessary to compensate Sanner. The court is required to "choose the least severe sanction adequate to accomplish the purpose of Rule 11. Thus, a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party, even where the court determines that the amount of the sanction should equal the fees claimed by the injured party." *Id.* at 523. After having considered the four factors enumerated in *Kunstler,* the court does not believe that, if a sanction were appropriate, that a sanction in the amount of attorney's fees incurred by Sanner would be the proper measure. Most of the fees incurred would have been incurred in this litigation in any event and are not the direct result of any alleged violation of Rule 9011. Such a sanction would grossly exceed the minimum necessary to deter such alleged conduct. The debtors have no ability to pay any significant sanction. They have been denied their discharges.

---

**5.** Time records for the pre-bankruptcy work were not submitted although he requested $13,510.00 for them.

This means that they must pay all of the obligations. At the same time, the chapter 7 trustee has or will administer all meaningful assets that they may have leaving them with no material assets that may be liquidated by them to satisfy their creditors. The judgment in this adversary proceeding is substantial. There will be substantial debts not paid by the trustee that will survive the bankruptcy. There are no other factors present that would affect the nature or size of any sanctions award.

Sanner also asserts that his attorney's fees are recoverable under Rule 7056 which incorporates F.R.Civ.P. 56(g). This rule pertains to bad faith affidavits submitted in connection with a motion for summary judgment. F.R.Civ.P. 56(g) is not applicable in this matter because Sanner's motion is devoid of any evidence that the debtors provided affidavits in bad faith or solely for the purpose of delay. Moreover, if there was a violation, Sanner failed to show the reasonable expenses incurred "which the filing of the affidavits caused the other party to incur." F.R.B.P. 7056(g).

Attorney's fees will not be awarded under Rule 9011. Although Sanner makes general arguments as to misconduct, specific conduct within the ambit of Rule 9011 has not been identified. If it were, the sanction would not be in the amount of his attorney's fees. It would be substantially less.

### D. Benefit to the Estate

Sanner's last argument to recover his attorney's fees is that his efforts in revealing the Polis' multiple frauds on the court conferred a benefit upon the entire estate. Sanner requests that the court use its inherent equitable powers and the powers provided to it pursuant to § 503(b)(3)(B) to award attorney fees to a creditor who confers a benefit to the estate. Under § 503(b)(3)(B), a creditor can obtain reimbursement of attorney fees as an administrative expense "if (1) it obtains approval of the Bankruptcy Court to recover property of the estate prior to recovering it and (2) there is a determination that the recovery is for the benefit of the estate." *In re Robbins*, 151 B.R. 364 (Bankr.W.D.Va.1993). Section 503(b)(3)(B) is not available here. Congress did not include § 503(b)(3)(B) merely to provide another means to recover attorney's fees. This section was included to provide a statutory basis for a court to approve actions by a creditor, instead of a trustee, to recover property transferred or concealed by the debtor. *In re Blount*, 276 B.R. 753, 760–61 (Bankr.M.D.La.2002). The creditor in these cases must be acting for the benefit of the estate as a whole, not just for that creditor individually.

Moreover, the creditor must first obtain court approval for its proposed action, approval that was never sought nor obtained. Sanner urges the court to follow cases in which creditors are permitted to recover fees and costs under § 503(b)(3)(B) despite their failure to first obtain approval from the court as the statute requires. *See In re Antar*, 122 B.R. 788, 791 (Bankr.S.D.Fla.1990) (retroactive allowance and authorization costs and fees related to the investigation and prosecution of fraudulent action); *In re George*, 23 B.R. 686 (Bankr.S.D.Fla.1982) (allowing administrative claim to creditor whose actions conferred a 5% benefit to creditor body despite creditor's failure to first obtain court approval); *In re Rumpza*, 54 B.R. 107 (Bankr.D.S.D.1985) (allowing recovery of fees and costs where concealed assets were uncovered even though the objection to discharge was ultimately unsuccessful).

These cases are a minority view or reflect extraordinary circumstances. The

better view requires prior court approval as a prerequisite to a creditor's filing an application to recover compensation for services which benefit the debtor's estate under § 503(b)(3)(B). *See In re Schachter,* 228 B.R. 359, 363 (Bankr.E.D.Pa.1999) and the decisions cited therein. As indicated in *Schachter,* two of the cases cited by Sanner, *Antar* and *George* are not uniformly followed within their own district. *In re Monahan,* 73 B.R. 543–44 (Bankr. S.D.Fla.1987) (contrary decision in the same district). Because Sanner did not obtain prior court approval when he had the full opportunity to do so, he cannot collect his attorney fees pursuant to § 503(b)(3)(B).

▮ It should be noted that § 503(b)(3)(B) provides for the recovery of an administrative expense from the estate, not from the debtor. In this case, the chapter 7 trustee properly opposed any award of an administrative fee from the estate. Finally, it should also be noted that the trustee—absent separate statutory authority—does not recover his attorney's fee from the debtor for similar actions he that he may bring. A creditor who in this instance can rise no higher than the trustee on whose behalf he would be acting cannot recover his attorney's fees from the debtor either.

### E.  Costs

Sanner sets out no separate argument for his costs. He appears to assume that his costs follow his attorneys fees. To the extent that he is requesting taxable costs, he should follow the usual procedure through the clerk's office.

### Conclusion

Damages will be awarded to Sanner in the amount of $105,335.44, and prejudgment interest in the amount of $92,550.97 both with interest from the date of entry of this order until paid at the federal judgment rate. The request for attorney's fees will be denied.